Josephine Ward Cahill, Appellee, v. Mortimer L. Cahill et al.
Appeal of Mortimer L. Cahill, Appellant.

Gen. No. 42,275.

Heard in the second division of this court for the first district at the June term, 1942. Opinion filed November 17, 1942. Rehearing denied December 8, 1942.

MONTGOMERY, HART, PRITCHARD & HERRIOTT, of Chicago, for appellant; CHARLES O. PARKER, of Chicago, of counsel.

LEO J. BARTOLINE, of Chicago, for appellee; JAMES B. McKEON, of Chicago, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

By this appeal defendant, Mortimer L. Cahill, seeks to reverse an order which denied his motion for a reduction in the amount of his alimony payments and which directed him to pay certain attorney's and commissioner's fees.

January 10, 1935, a decree of divorce was entered in favor of plaintiff, Josephine Ward Cahill, and against her then husband, Mortimer L. Cahill. The parties entered into a settlement agreement on January 9, 1935, which was incorporated as part of the decree. Under this agreement defendant agreed to "pay as alimony and for the maintenance and care of the boy of the parties hereto, Jack Mortimer Cahill, the sum of not less than $200 . . . monthly." The agreement also provided for the assignment by the defendant to the plaintiff of certain insurance policies on defendant's life and for the payment of the premiums on such policies by the defendant.

On May 6, 1941, plaintiff filed a petition in which she alleged *inter alia* that defendant had paid her only $150 for each of the months of February, March and April, 1941, whereas the decree provided that he pay her $200 a month. Her petition prayed that defendant be held in contempt of court for his failure and refusal to comply with the terms of the decree. Defendant filed an answer to this petition and he also filed a petition praying for a reduction in the amount of alimony he was required to pay under the decree. Defendant's answer to plaintiff's petition and defendant's petition for modification averred facts showing

a change in circumstances since the decree was entered and alleged that he was not able to pay more than $150 a month as alimony. Plaintiff filed an answer to defendant's petition for modification denying his right to a reduction. Both plaintiff's and defendant's petitions and the answers thereto were referred to a special commissioner for hearing. The commissioner's report recommended the continuance of the alimony payments of $200 monthly as ordered by the decree. Defendant filed exceptions to the commissioner's report. After hearing by the trial court on the commissioner's report and the exceptions thereto, an order was entered which approved the commissioner's report and continued in effect the alimony payments required to be made under the decree of divorce. As heretofore stated it is this order from which the appeal is taken. There is no substantial dispute as to the facts.

When the decree of divorce was entered in January 1935 defendant had an annual net income of $14,000. During the preceding year he had suffered a breakdown in health which resulted in his total disability. Under the terms of an insurance policy carried by him he was entitled to receive payments of $1,000 monthly as long as his total disability continued. In addition to such disability payments of $1,000 monthly he at that time received approximately $2,000 a year net income from an insurance business previously conducted by him. Defendant received the disability payments of $1,000 monthly under his insurance policy from January 1935 to March 1936 when these payments were reduced to $500 monthly, which amount he has continued to receive up to the present time. Defendant's present income consists of $6,000 a year, received from his disability insurance plus a varying amount of insurance commissions for the renewal of policies sold by him when he was engaged in the insurance business. These commissions averaged about

$50 a month at the time of the hearing before the commissioner but are gradually decreasing because such renewals are going off the books. His total income for 1941 was about $6,600. Because of the condition of his health defendant is not engaged in any gainful occupation. He has endeavored to earn money by writing fiction but has not realized anything from this source. He has been advised by his physician to refrain from engaging in any active business and he has not been able during the past several years to earn any income. He is 59 years old and has no property other than his household furniture and a small amount of cash. Defendant remarried and is living with his present wife in Springfield, Missouri. He moved there because of his poor health and in order to take care of his mother. He is the sole support of his mother and pays $65 a month to maintain her in a sanitarium.

At the time of the entry of the decree of divorce Jack Mortimer Cahill, son of plaintiff and defendant, was a minor. He became of age January 8, 1941 and is now employed and earns $25 a week. At the time of the hearing he was living with plaintiff and contributed to the payment of their household expenses. Plaintiff has been employed part time by Marshall Field & Company, Chicago, since the entry of the decree and earns from $65 to $70 a month. It was after the son became of age that defendant reduced his monthly payments from $200 to $150 a month.

According to the evidence presented before the commissioner plaintiff and defendant entered into an agreement in October 1938 whereby Cahill was released by plaintiff from payment of the $100 monthly premiums on the insurance policies which he had assigned to her under the provisions of the decree. Pursuant to this agreement these policies were dropped and plaintiff received the net cash surrender value of same amounting to $2,155. As to said agreement plaintiff and her two sons testified that in considera-

tion of plaintiff releasing defendant from the payment of the insurance premiums of $100 a month, he agreed to pay her $200 a month as long as he lived and as long as he was in receipt of the $500 monthly disability payments. Defendant did not deny that he made this agreement.

Defendant's theory is that "since the decree was entered there has been a change in circumstances which, upon principles of equity, requires a reduction in the alimony payable under the decree." The changes of circumstances relied upon by the defendant consist of "(1) the drastic reduction in his income; (2) the coming of age of the minor son of the parties who had previously been supported by the plaintiff out of the alimony paid to her by the defendant; and (3) plaintiff's employment in a gainful occupation and her earnings of substantial monthly sums."

Plaintiff's theory is stated in her brief as follows: "(1) In October, 1938, upon full consideration the plaintiff and defendant, according to defendant's circumstances at that time, adjusted the matter of payments. (2) The plaintiff accepted the offer of defendant to pay her $200 a month for the life of defendant, in consideration of plaintiff's agreeing to the cancellation of life insurance policies given her under divorce decree, aggregating $23,122.04, thus relieving him from payments of premiums amounting to $100 a month. (3) That if said adjustment agreement had been submitted to this Court for approval it would be adopted as the decree of this Court, no fraud or unfairness being shown or now claimed by defendant. (4) That the parties in 1938 did not rely upon the equity powers of this Court for the adjustment of the matter, and that the question is not now open for consideration, in the absence of a change of circumstances between October, 1938, and the present time. (5) That there is no proof in this record of a change in the circumstances of the defendant between 1938 and the

present time. (6) That the lower Court did not err in overruling defendant's petition for a reduction in payments from $200 to $150 a month."

Section 18 of the Divorce Act (ch. 40, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 109.186]) provides that "the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, . . . as shall appear reasonable and proper." Such application may be made even though the parties entered into an agreement for the payment of alimony and maintenance, which was incorporated in the decree. (*Herrick v. Herrick,* 319 Ill. 146; *Maginnis v. Maginnis,* 323 Ill. 113; *Adler v. Adler,* 373 Ill. 361.)

In the *Herrick* case where an alimony agreement between the parties was incorporated in the decree of divorce, the Supreme Court affirmed an order of the trial court which reduced the amount of alimony payable under said decree from $300 to $200 a month and also relieved the husband from making certain other payments amounting to $300 annually. There the court said at p. 153:

"The foundation of alimony being the obligation of the husband to support his wife, and the decree being merely the enforcement of that obligation in behalf of a wife legally permitted to live apart from her husband, our statute wisely recognizes that a change in circumstances may require a change in the decree. As the measure of the sum required is necessarily the need of the wife and the ability of the husband to pay, the amount decreed will logically be affected by change in either element. (*Wallace v. Wallace,* 74 N. H. 256, 67 Atl. 580.) Where there is a change in circumstances which upon principles of equity requires a change in the order for alimony there is no doubt of the power of the court to make the modification. (*Cole v. Cole,* 142 Ill. 19.) In making the change the court should take into consideration, as it apparently

did in the case at bar, the property and income of the parties, their ages, health and social conditions, and whether there are children dependent upon one or both of them for support. (*Gilbert v. Gilbert,* 305 Ill. 216; *Decker v. Decker,* 279 id. 300.) It is undisputed that there has been considerable change in the circumstances of this family since the original decree was entered. When the order modifying the allowance for alimony was made the son was twenty-four years old and was soon to graduate from college, and appellee by reason of ill-health had been compelled to resign from his professorship and had suffered considerable reduction in his regular income.''

Plaintiff insists that the agreement of October 1938, heretofore referred to, ''is the law of the parties as to the subject matter thereof'' as of the date when made and that said agreement precludes consideration of any change of circumstances that occurred between the date of the entry of the decree and the time said agreement was entered into. No case has been cited and we have been unable to find one which enunciates any such rule of law. In *Walter v. Walter,* 189 Ill. App. 345, after the entry of a decree of divorce allowing alimony and after the entry of a subsequent order reducing such alimony to $6 a week, the parties entered into an agreement whereby the wife released the husband from all claims for future alimony in consideration of his assignment to her of a certain life insurance policy and his promise to pay the premiums thereon. Subsequent to the making of this agreement, the wife petitioned the court for and secured an order directing the husband to pay $5 a week as alimony. On appeal to this court from that order same was affirmed. In that case this court speaking through Justice McSurely said at pp. 348, 349:

''It does not appear that this agreement between the parties was ever brought to the attention of the court, but it seems to have been made without the knowledge

or approval of the court, and there is no modification of the original order directing the payment of alimony. Is such a contract binding upon the complainant and on the court, so that the court may not on application grant whatever relief to complainant may seem equitable and just? We think it is not. We hold that before such an agreement can be binding and conclusive its fairness and equity must be made manifest to the court having jurisdiction, and that its approval must appear of record. In *Audubon v. Shufeldt*, 181 U. S. 575, the court said: 'Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction. Generally speaking, alimony may be altered by that court at any time, as the circumstances of the parties may require. . . .' This was quoted with approval in *Welty v. Welty*, 195 Ill. 335 (340). To the same effect also is *Barclay v. Barclay*, 184 Ill. 375, while in *Silberschmidt v. Silberschmidt*, 112 Ill. App. 58, where a contract was involved substantially the same as the one before us, the court held, in effect, that the approval of such a contract rests entirely in the discretion of the court upon review of all the circumstances and said that 'the agreement executed by the parties, unsanctioned by the court, could not control the court . . . and that the court was as untrammeled in the premises as if said agreement had not been made.' And in *Recht v. Kelly*, 82 Ill. 147, quoted with approval in *Zachmann v. Zachmann*, 201 Ill. 380, the general principle is stated to be that 'laws enacted from considerations of public concern, and to subserve the general welfare, cannot be abrogated by mere private agreement.' "

The court is not controlled by the private agreement of the parties respecting alimony and may adopt it

or reject it, as seems consistent and proper from the situation of the parties as disclosed by the evidence. (*Herrick v. Herrick, supra; Warren v. Warren,* 116 Minn. 458.) In *Hill v. Hill* (Colo.), 107 P. (2d) 597, the parties entered into an agreement reducing the alimony as fixed by the decree. There the court in passing upon the conclusiveness of such private agreement said at p. 598:

"The question is: May the parties themselves agree to the payment of a lesser amount than that fixed by the decree? We know of no rule which precludes parties who are *sui juris* from entering into such a contract, and while the court is not necessarily bound by the agreement, if its terms are fair and no fraud attends its execution, it may be recognized by the court."

Thus the agreement between the parties of October 1938, entered into without the approval of the court, is not the law of the case as of the date of said agreement and is not conclusive and binding upon the court or the defendant as plaintiff claims. This does not mean that the agreement is not entitled to any consideration. It is merely one of the elements that should be considered with all the other facts and circumstances in determining whether there was such a change in the circumstances of the parties, between the date of the entry of the decree and the time of the hearing on defendant's petition for reduction, as to warrant the modification requested by him. The agreement should be considered both as to its purpose and fairness and while plaintiff strenuously insists that defendant's promise to pay her personally $200 a month alimony as long as he lived in consideration of her agreement to relieve him of the payment of the $100 monthly insurance premiums was eminently fair, it must be remembered that when she relieved him of the payment of said insurance premiums she received the net cash surrender value of the policies, amounting to $2,155.

This is not a case where a divorced husband attempted to evade his obligations under the decree at any time. In fact, as will be hereinafter shown, he paid his wife or in her behalf over a considerable period far more than his income warranted. Cahill faithfully complied with the decree of the court as to the payment of alimony and maintenance until his minor son became of age in January 1941. At that time defendant reduced his monthly payments to his wife from $200 to $150 a month. The trial court permitted him to pay at this rate until the order was entered approving the recommendation of the commissioner that defendant's motion for reduction be not allowed. As already stated, defendant's total net income was $14,000 a year when the decree was entered in January 1935 and pursuant to the agreement of the parties at that time it was ordered that he pay plaintiff or in her behalf $300 monthly, which included her alimony, the minor son's maintenance and insurance premiums. This $300 monthly payment amounted to slightly more than 20 per cent of his then income. His wife was not employed at that time. He continued to receive approximately that same income until March 1936 and also continued to make the payments ordered by the decree. Notwithstanding that the monthly disability payments which defendant had been receiving under his insurance policy were reduced from $1,000 to $500 a month commencing March 1936 and that the income from renewals on insurance policies, which he sold while he was in the insurance business, had been gradually decreasing, he continued to pay plaintiff or in her behalf $300 a month until October 1938. During all this period and since the decree was entered plaintiff was employed and earning $65 or $70 a month. Defendant's income from all sources in 1938 was about $6,400 a year, or $533 a month. So it will be seen that during the period from March 1936 until October 1938 defendant was paying

plaintiff $200 a month for her alimony and maintenance of the minor son and insurance premiums of $100 monthly in her behalf, which payments amounted to more than 56 per cent of his then income of $533 a month. In addition plaintiff was earning $65 or $70 a month. At the same time defendant was paying $65 a month for the maintenance of his mother in a sanitarium, which latter payment he was both morally and legally bound to make. Thus defendant was left with but $168 a month out of his total income of $533 a month for the support of himself and his second wife, while plaintiff was receiving an income of $265 or $270 a month for the support of herself and minor son. Defendant's financial situation as just depicted compelled him to seek relief from plaintiff in 1938 and their negotiations culminated in the agreement of October 1938.

Thus it clearly appears that for a considerable period prior to the time the agreement of October 1938 was entered into defendant was oppressively burdened with the payments he was required to make under the decree. In order to be relieved of at least some of that burden defendant sought to make some reasonable arrangement with his wife without resorting to the court to adjust their financial relations in accordance with the changed circumstances of the parties. What was plaintiff's purpose in securing from defendant his agreement to pay her $200 a month by way of alimony for herself instead of having him continue his monthly payments of $200 covering both her alimony and the minor son's maintenance? She knew that her minor son would become of age in a little more than two years thereafter and that in all likelihood defendant would be allowed a reduction when the boy attained his majority. She desired to protect herself in advance against such probable reduction. There was really no consideration at all on her part for the agreement she secured from defendant since she made

no concession to him that he was not entitled to as a matter of equity.

The evidence shows conclusively that defendant could not possibly pay more than $200 a month when the agreement of October 1938 was consummated. It was then a question as to whether plaintiff preferred to have defendant continue to pay the monthly insurance premiums of $100 and to pay her $100 monthly instead of $200 for her alimony and the maintenance of her son or to have him continue to pay her $200 monthly for her alimony and the maintenance of her son and surrender her insurance policies, thus releasing defendant from the payment of the premiums on same. She chose the latter alternative and as has been shown received the cash surrender value of the policies amounting to $2,155. Thus she elected to take the then value of the insurance policies and continued to receive $200 a month from defendant. It is difficult to perceive under the circumstances any consideration from her for defendant's promise to pay her $200 a month as and for her own alimony as long as he lived.

We are convinced that if all the facts and circumstances existing at the time the agreement of October 1938 was entered into were submitted to a court of equity at that time, along with the evidence as to the change in the circumstances of the parties since the entry of the decree, that defendant would have been allowed a reduction of at least $100 a month in his aggregate payments without the imposition upon him of any other or further obligation.

We are impelled to hold that the private agreement of the parties of October 1938 was not only unfair but unconscionable and that it is not legally effective to preclude the consideration of the change in the circumstances of the parties since the entry of the original decree of divorce.

The change in the circumstances of the parties since the entry of the decree of divorce in our opinion

entitles defendant to the relief sought by him. As already shown plaintiff has been continuously employed since the entry of the divorce decree at a salary of $65 or $70 a month. The minor son had attained his majority, was employed, earned $25 a week and lived with his mother at the time of the hearing. Defendant's net income was $14,000 a year when the decree was entered and it was $6,600 a year at the time of the hearing. Deducting $65 a month, which defendant was both morally and legally obligated to pay for his mother's maintenance in a sanitarium, from his monthly income of $550, left him with a monthly income of $485 for all other purposes. If compelled to continue to pay plaintiff $200 monthly solely for her own alimony, the minor son having become of age, this would give her an overall income of $265 or $270 a month while defendant would be left with $285 a month. The allowance to plaintiff of $200 monthly alimony out of defendant's $485 available monthly income amounts to slightly more than 40 per cent of same. If plaintiff were allowed $150 a month alimony that would amount to about 30 per cent of defendant's $485 available monthly income, which together with the $65 or $70 monthly income from her employment, would give her an aggregate income of $215 or $220 a month. This would seem ample and fair in view of all the circumstances and particularly in view of the change in the circumstances of the parties since the decree of divorce was entered in January 1935. The reduction in defendant's alimony payments from $200 to $150 a month would afford plaintiff a total monthly income of $215 or $220, as has been shown, and would leave defendant with a net monthly income of $335. Thus her total income would amount to about two-thirds of his.

The law is well established that where both the wife and husband are in receipt of income, the income of the wife as well as that of the husband must be taken

into consideration in determining the amount of alimony the divorced husband must pay his former wife.

In *Gilbert v. Gilbert,* 305 Ill. 216, the court in enunciating this rule said at p. 221:

"Where both have an income, the method of computation of what is a proper allowance is to add the wife's annual income to her husband's, consider what, under all the circumstances, should be allowed her out of the aggregate, then from the sum so determined deduct her separate income, and the remainder will be her proper allowance."

To the same effect is *Decker v. Decker,* 279 Ill. 300.

For the reasons stated herein we are impelled to hold that the refusal of the trial court to grant defendant's petition for a reduction in the amount of his alimony payments as required by the original decree of divorce constituted an abuse of discretion by said court.

The order of the superior court of January 26, 1942 which denied defendant's petition for a reduction in his alimony payments and directed him to continue to pay $200 a month to plaintiff in accordance with the provisions of the divorce decree, is reversed and the cause is remanded with directions to sustain defendant's exceptions to the commissioner's report and to allow defendant a reduction from $200 to $150 monthly in his alimony payments as prayed in his petition.

*Order reversed and cause remanded with directions.*

SCANLAN, J., concurs.

FRIEND, J., took no part.