300 P.2d 596

Darwin W. LARSEN, Plaintiff and Appellant,

v.

VaLene P. LARSEN, Defendant and Respondent.

No. 8481.

Supreme Court of Utah.

July 31, 1956.

2. 1 Utah 2d 175, 264 P.2d 279.

Harvey A. Sjostrom, Logan, for appellant.

L. Delos Daines, Salt Lake City, for respondent.

WADE, Justice.

In September, 1946, Darwin W. Larsen, appellant herein, obtained a divorce from his wife, VaLene P. Larsen, defendant in that suit and respondent herein. Respondent was granted custody of their minor child and awarded $35 per month for the support of the child while in the care of respondent. In July, 1955, respondent filed an affidavit for an order to show cause why a judgment should not be entered against appellant for failure to make the monthly payments for the support of the child since June, 1947. Appellant's return to said order to show cause alleged that his failure to make payments as ordered in the divorce decree was due to respondent's refusal to accept such payments from him, and her telling him that a third party, whom she married, was supporting such child, and that all she wanted from appellant is that he should refrain from trying to see her or the child. Because of such representations by respondent, appellant alleged he has now remarried and taken on other obligations which he would not have undertaken had he known she would demand all monies which were payable under the decree. He further alleged that respondent had informed him that she and her present husband would support the child if he would stay away and not interfere in their lives, and that the husband of respondent has supported

such child of his own free will and not of necessity and had not given such support in contemplation of being repaid therefor.

At the trial appellant testified that he had made payments for the support of his child in accordance with the divorce decree to respondent's mother, who was taking care of the child at respondent's request until respondent took the child. It was about this time that appellant had been asked by the Bishop of his church if he would go on a mission if called. He discussed this with respondent who told him that she would not require him to pay for the child's support. He further testified that he telephoned her a few years later as soon as he returned from his mission and again discussed their child with her, and asked what he could do for her, but was told that the only thing respondent wanted was to have no interference from him in her life. Respondent denied that she had refused any payments for the support of the child and testified that none had been offered to her by appellant, although she admitted she never asked for or tried to collect any of the payments. The evidence also disclosed that the child had taken the name of her stepfather when she attended school.

The court found that appellant had not made the payments as ordered by the divorce decree since June, 1947, until June, 1955, and that respondent was entitled to a judgment for amounts due for that period for the use and benefit of the child. The court ordered that if appellant would pay the amount found due within ten days to the Clerk of the Court, the Clerk would hold that money for thirty days within which time appellant could petition the court to direct how the money should be used. It further ruled that estoppel was not available as a defense for nonpayment of accrued support money for a minor child. This appeal is from the judgment in favor of respondent in conformance with the court's conclusions.

Appellant contends the court erred in granting the judgment and in failing to make findings on the issues of estoppel and that the support of the child by a third person was voluntary, and that a finding of those issues in favor of appellant would be complete defenses to this suit to recover for accrued support money due under the divorce decree. In support of his contention appellant cites, among other cases, McKee v. McKee, 154 Kan. 340, 118 P.2d 544, 137 A.L.R. 880 and the annotation thereto commencing on page 884, and the cases cited therein in subdivisions 11(a) and (d) commencing on pages 886 and 897. It is stated on page 886 of 137 A.L.R.:

"It would seem, from a perusal of the cases, that it is recognized by at least a majority of the courts that circumstances may be such as to enable a husband to avoid payment of permanent alimony or support and maintenance of children allowed by decree or order

of court, or at any rate payment of past-due instalments thereof, on the ground of laches or acquiescence on the part of the wife. However, as intimated, the question as to whether such defense is available in a particular case depends upon the circumstances present therein. * * *"

■ A reading of the cases cited in support of the above quoted statement discloses that relief to the father of a minor from such support money judgment depends on the view of the court determining the case as to what is equitable under the circumstances. We conclude that the evidence is sufficient from which the trial court could reasonably find facts which would support a holding that the respondent is barred from recovering a part of this judgment for back support money on the grounds which the above quotation calls laches or acquiescence but which actually appear to rest on equitable estoppel.[1] We are sending the case back to make findings on those issues for we conclude the evidence is sufficient to support findings either way. The court may make such findings from the evidence already received or the court in its discretion may allow the parties to reopen the case and introduce additional evidence on such questions.

■ In Price v. Price,[2] we held that because the state is interested in the child's welfare the parents cannot effectively release *future* payments of support money by agreeing with the other to that effect. However, this does not mean that a mother may not by her actions or representations, or both, preclude herself from recovering past due installments of support money to reimburse her for the money which she has spent for the support of the child. Where the father's failure to make such payments was induced by her representations or actions and where as a result of such representations or actions the father has been lulled into failing to make such payments and into changing his position which he would not have done but for such representations, and that as a result of such failure to pay and change in his conditions it will cause him great hardship and injustice if she is allowed to enforce the payment of such back installments, she may be thereby estopped from enforcing the payment of such back installments. So in this case if the trial court finds from the evidence that appellant would not have left his job and gone on a mission for his church but for such representations that she would not require him to pay such installments if he would just leave her and the child alone, and that appellant in reliance upon her representations complied with her request and that thereafter she supported the child and if such payments are collected from him

1. Openshaw v. Openshaw, 105 Utah 574, 579, 144 P.2d 528.

2. Price v. Price, 4 Utah 2d 153, 289 P.2d 1044.

227

228

she will be entitled to them for her own use and benefit, and that it would be a great hardship on him to now force him to make such payments, she would now be estopped from forcing him to pay such past due installments as accrued during the time he was filling such mission.

■ If the child has been the beneficiary of equivalent support and education so that the mother is entitled to receive all of said past due support money, she should be free to release, compromise or waive that which is hers. But if the child had been provided bare shelter and food, and denied the benefit of proper clothes and dental and medical care, then the mother should not be free to waive that portion of past due support money that the child has not received. The authorities cited above hold that this doctrine is applicable to this extent. It is the prerogative of the trial court to determine these facts and if he finds that facts exist to justify equitable estoppel, he should apply that doctrine and relieve the father from payment of the installments to the extent indicated. Of course, as to future payments, there is no question but what she is entitled to collect from the time she made demand, and appellant does not dispute this. He has been making such payments since her demand for them.

Reversed and remanded for findings on the issues of laches, acquiescence or estoppel. Parties to bear their own costs.

McDONOUGH, C. J., and CROCKETT and WORTHEN, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, respectfully suggesting that the main opinion 1) violates the principle that on appeal we look at the facts in a light most favorable to the winner below, 2) winks at the principle that he who seeks equity must do equity, and 3) flies in the teeth of our own previous pronouncements.

In contrast to the facts recited in the main opinion, here are those most favorable to defendant: After the parties were divorced, plaintiff paid the amount ordered *only until defendant remarried,* when he refused to continue the payments, saying he would not pay but would create a trust fund for the child,—which he never did. Defendant did not refuse to accept payments, although language in one of her letters was interpretable either as a consent that plaintiff need not pay while serving on a mission, or as a mere suspension of payments until he returned, in which letter, nonetheless, the defendant reminded plaintiff that he owed over $1,000 support money. Defendant did not demand any money, considering it useless in the light of plaintiff's declarations. She did not sue him for the delinquencies because she was residing out-

side the state. Although plaintiff paid defendant nothing after her remarriage, he concealed the fact that thereafter and until he went on his mission, he received $25 per month as a veteran for the support of the child after he represented to the government that he was obligated to pay such support. He deliberately converted this money. After returning from his mission in Europe where presumably he was indoctrinating the continental heathens with the virtues of truth and honesty, he again obtained money from the government on his representation that he had to support the child,—this time at the rate of $30 per month for 30 months, —all of which again he concealed from the defendant, and all of which money he again converted, thus defrauding not only the government, but his wife and child. After his role of emissary of the Lord, plaintiff enjoyed a tour of the continent,—and for aught we know paid for the sightseeing trip with the money he got from the government to support his child,—conveniently pocketed by him. Defendant said she never would have indicated any disposition to relieve him of any payments during his visitation in Europe had she known of the concealed government money or the extended continental tour abroad after his period of service, religious or otherwise. It appears that plaintiff's propensity for embracing a double moral standard extended to the spoken word: He stated that he divorced defendant because he could rely on nothing she said, but as to what she said about relieving him of his parental obligation, why, of course, he relied on everything she said.

What resemblance do these facts bear to those set out in the main opinion? Who is seeking equity in this case, save an admitted converter of public funds? To whom is the main opinion extending the lofty prerogatives of the chancellory, save to a concealer of facts, whose intent not only was to avoid an obligation, but to feather his own nest? To whom is the court making available the principle of estoppel,—a principle which aborns only where injustice would result to him whose hands are spotless and who honestly has relied on the representations of another to his detriment, save to one who, when it is to his advantage, claims reliance on the words of another upon whose words he claims he could not rely.

No principle is firmer in our jurisprudence than the one requiring that he who seeks equity must do it. No facts could reflect the applicability of that principle better than those here. This court weighs the facts in an equity case, and we should sustain the lower court since the facts sustain that court's conclusion. It is no answer to say that the lower court may have given the wrong reason for that conclusion since many times we have said that a right con-

clusion is not vitiated by assigning a wrong reason thereto.

I am also of the opinion that the majority fails to follow our own previous pronouncements. Assuming that defendant made the representations claimed by plaintiff,—which she denies,—any representation suggesting that she would not hold the plaintiff to the obligation ordered by the court was a representation as to future payments. In Price v. Price we said that even a written, signed agreement by a mother that she would not hold the father to the obligation ordered by the court was void. If we refuse to sanction a representation made in a formal agreement in writing, how in the world can we consistently sanction the same kind of representation made orally or in a letter, so as to bind one on a theory of estoppel?

I believe the trial court should be affirmed because 1) the facts viewed most favorably for defendant clearly show that plaintiff did not rely on any representations to his detriment that would justify even a casual discussion of the doctrine of estoppel, 2) the plaintiff, in seeking equity, did so with unclean hands, and 3) the facts of this case are stronger than those in the Price case, where we rejected the idea that support money for a child may be the subject of barter in the marketplace.