342 P.2d 103

**Sereta J. WALLIS, Plaintiff and Appellant,**

**v.**

**Marvin E. WALLIS, Defendant and Respondent.**

No. 8946.

Supreme Court of Utah.

July 31, 1959.

238

Shirley P. Jones, Jr., Salt Lake City, for appellant.

Marvin E. Wallis, pro se.

McDONOUGH, Justice.

From a determination by the District Court that a post-divorce agreement between the parties concerning alimony and child support was still in effect, plaintiff appeals.

The parties were divorced in 1955. The decree awarded the plaintiff a divorce and $350 monthly for alimony and child support. After a few months defendant ceased making payments. About a year thereafter, when the defendant was $4,117.50 in arrears, the parties entered into an agreement the essential terms of which were these: Defendant was to pay only $100 per month as alimony and child support for three years, during which time he was also to pay the arrears of $4,117.50; if he complied with the above condition plaintiff would then agree to a reduction in the alimony and child support to $125 monthly.

It expressly provided that if the defendant failed to comply with the above conditions, then the agreement was null and void, and the plaintiff was to retain her full right to $350 a month retroactively.

Upon petition of the parties the trial court approved the above agreement and accepted it to be filed, but did not make it a part of the decree.[1]

Defendant made payments under the agreement from October, 1956, through February, 1958, but stopped making them in March, 1958. Plaintiff brought an order to show cause why defendant should not be held in contempt and for a total judgment of $9,417.50, which included all arrearages figured at $350 per month since the entry of the original decree.[2]

After a hearing upon evidence of defendant's inability to pay because of being out of employment the court found he was not in contempt because his failure to pay the $100 had not been wilful. This portion of the order is supported by the evidence and is not vulnerable to attack. However, the trial judge further found that, because the defendant had not wilfully breached the terms of the agree-

1. Presumably, this procedure was followed in light of Marks v. Marks, 98 Utah 400, 100 P.2d 207.

2. See Austad v. Austad, 2 Utah 2d 49, 269 P.2d 284, 48 A.L.R.2d 256, explaining Myers v. Myers, 62 Utah 90, 218 P. 123, 30 A.L.R. 74; see also Larsen v. Larsen, 9 Utah 2d 160, 340 P.2d 421, on some aspects of the finality of past due instalment payments under a divorce decree.

ment referred to above, the agreement was still in effect. The plaintiff attacks the latter ruling upon this appeal.

The power of the parties to make agreements changing the monetary terms of a divorce decree is generally upheld except where future child support is concerned,[3] absent hardship, fraud, duress, concealment, undue influence, or mutual mistake.[4] The cases cited in note 3 discuss special problems arising from such agreements and the applicable rules of the respective jurisdictions. This power is always subject to the general equitable control the court may exercise in the interest of the parties and particularly in the welfare of the children.[5]

We are unable to agree with the determination made by the trial court in this instance in regard to the agreement. It contains no hardship clause, but rather, a specific recital that it will be void if the defendant fails to live up to the conditions specified. If it had not been a matter of agreement, but only a portion of the decree, the court might have excused performance because of the lack of wilfulness. However, such was not the case, and the alimony and support money having accrued, they become a judgment.[6] The fact that the defendant did not wilfully breach the agreement is not grounds for denying the appellant the right to enforce its terms and to refuse to waive the accumulations under the decree.[7]

It is apparent that the trial judge was quite understandably inclined to be sympathetic to the defendant because of the plight he finds himself in. It seems likely that if the court had not erroneously thought the agreement could be continued in force and effect, it would have granted defendant's cross-petition to modify the decree by reducing the payments to correlate more realistically with the defendant's ability to pay. In view of the correction of that error it would be in order for the court to re-examine the situation and make such order as it deems equitable and proper under all of the circumstances, including a correct view of the noneffectiveness of the agreement because of the defendant's failure to comply therewith.

3. Price v. Price, 4 Utah 2d 153, 289 P. 2d 1044.

4. See McKinney v. McKinney, 152 Kan. 372, 103 P.2d 793; Hill v. Hill, 106 Colo. 492, 107 P.2d 597; Schmelzel v. Schmelzel, 287 N.Y. 21, 38 N.E.2d 114; Goldman v. Goldman, 282 N.Y. 296, 26 N.E. 2d 265; Apfelbaum v. Apfelbaum, 111 N.J.Eq. 529, 162 A. 543, 84 A.L.R. 298; Higgins v. Higgins, Sup., 119 N.Y.S.2d 103; Cavenaugh v. Cavenaugh, 106 Ill. App. 209.

5. Anderson v. Anderson, 110 Utah 300, 172 P.2d 132; Price v. Price, 4 Utah 2d 153, 289 P.2d 1044; compare Larsen v. Larsen, 5 Utah 2d 224, 300 P.2d 596.

6. Openshaw v. Openshaw, 105 Utah 574, 144 P.2d 528.

7. Compare Cahill v. Cahill, 316 Ill.App. 324, 45 N.E.2d 69.

That portion of the order of the court that the agreement relating to the reduction in payments of alimony and support money is in force and effect is reversed, and this case is remanded for such further proceedings as the trial court deems proper.

Costs to appellant.

WADE, J., concurs.

CALLISTER, J., concurs in the result.

CROCKETT, Chief Justice (concurring specially).

I concur in the main opinion. However, in view of the fact situation here, which is not too uncommon in post-divorce proceedings of this character, I desire to add these further comments.

It is not open to question that the general rule is established by the decisions of this court that accrued payments of alimony and support money have the effect of a judgment. But like all general rules it is applicable under the conditions for which it was formulated, and is subject to exceptions under particular circumstances. The principle of recognizing such exceptions is stated in the Openshaw case, relied upon by the appellant. After reciting that the right to collect accumulated payments vests, the court states further: " * * * unless the party who claims the right has

acted in such manner as to clearly prejudice the substantial rights of the party against whom the right is sought to be enforced." [1] An apt illustration of such an exception is the case of Larsen v. Larsen. There we upheld a determination by the trial court that the wife (defendant) was estopped from claiming payments for a period of three and one-half years because she had encouraged the plaintiff (husband) to go on a church mission and had otherwise permitted him to assume that she and her second husband would take the responsibility of the child and release him from such obligation.[2]

I propose no defense of husbands who wilfully or carelessly fail to meet their family obligations. One who abandons the support of his children to others is guilty of a grievous wrong and should be dealt with sternly and justly. However, there is another side of the coin. In many cases the circumstances require that the husband be loaded with as heavy a burden as he can bear. Sometimes, through no fault of his own, circumstances become worse; the expense of going into court prevents him from seeking adjustment of the decree; and when he is cited for contempt, an insuperable debt has accumulated. Different from other obligations, it cannot be discharged in bankruptcy. So he finds himself floundering in deep waters with such

1. Openshaw v. Openshaw, 105 Utah 574, 578, 144 P.2d 528, 530.

2. Larsen v. Larsen, 5 Utah 2d 224, 300 P.2d 596; second appeal, 9 Utah 2d 160, 340 P.2d 421.

a weight around his neck that he will never be able to extricate himself. This is particularly true if it happens, as it sometimes does, that a vindictive or avaricious spouse is more interested in causing him misery than in cooperating so that he may produce the best possible income for the welfare of all concerned.

The fact that the marriage has terminated does not obliterate whatever results it may have produced. They cannot be wished away nor ignored. Both spouses continue to sustain some duties toward each other and to the children. It is important to remember that these duties do not all run one way: they are reciprocal and must be faced up to if the proper objective is to be served. The purpose of the divorce decree and of the conduct of the parties under it must be calculated toward the solution of existing problems and the sustenance of the parties so they can reconstruct their lives on the most wholesome foundation possible under the circumstances. The purpose of the provision for alimony and support money is to provide for the current needs, and not to allow the beneficiary to sit by and permit a burdensome debt to accumulate and then use it to harass the defendant so that he cannot hold a job or live a respectable existence. Even though the decree may impose the responsibility of support upon the husband primarily, the wife also has a duty to see that the children are furnished the necessities of life. It is because of the recognition of the continuing obligations of the parties for the welfare of the children that the statute provides that they are subject to such further orders of the court with respect thereto as the court "shall deem reasonable and proper." [3]

In regard to these matters the court is endowed with powers over property and persons far broader than in any other type of civil action. It may make such disposition of the property and impose such controls upon their persons as it deems necessary for their welfare. If they refuse to abide by its orders, the court may hold the parties in contempt and enforce its decrees by the extraordinary means of incarceration. In view of the importance of the court's functions in such cases it seems necessary that it have and exercise the power to compel the wife as well as the husband to conform her conduct to reasonable requirements consistent with the purpose.

If the issuance of an execution (and the attachment or garnishment used to implement it) will have the effect of destroying the husband's employment or seriously impairing his ability to provide the income necessary to meet the terms of the decree, there is no good reason why the court should not exercise its broad powers and

3. See Sec. 30-3-5, U.C.A.1953.

restrain the plaintiff wife from executing on the judgment for such time as may be necessary for the welfare of all parties concerned.

It is appreciated that it may seem somewhat anomalous to declare on the one hand that accumulated payments of support money or alimony have the effect of a judgment, and on the other, to recognize the power of the court to stay the execution of such judgment. Anomalous though it may be, it is like other areas of the law where the assertion of legal rights must be left to the discretion of the court upon the balancing of reciprocal rights of others. The trial judge, having the parties before him, will be able to determine when the facts justify making such an order. It must be presumed that such an extraordinary measure of staying execution would be resorted to with caution and only when necessary. That the court may do so under proper circumstances, see Mason v. Mason, 148 Ore. 34, 34 P.2d 328; Franklin v. Franklin, 83 U.S.App.D.C. 385, 171 F.2d 12; Wassung v. Wassung, 136 Neb. 440, 286 N.W. 340; Parenti v. Parenti, 71 R.I. 18, 41 A.2d 313. Although in those jurisdictions there are admittedly some differences from our statutory and case law in regard to the effect of a judgment, the fundamental doctrine upon which they rest is that the court has broad supervisory powers over the parties whose rights are dependent upon the decree and may stay execution of the judgment if and when it appears to be necessary to serve their interest and welfare.

I have added this comment because we are affirming a judgment for many thousands of dollars against a man who apparently has been unable to meet the requirements of what proved to be a very burdensome decree, a fact recognized by the abortive agreement of the parties. When the matter is remanded to the district court, it must be presumed that there will be further proceedings. Such being the case, it does not seem to me to be amiss to comment on a matter of procedure, which I firmly believe to be sound in principle, and which it is conceivable the trial court might deem helpful in solving difficulties which exist in this case. As to the advisability of commenting on questions of law that may arise in further proceedings, see Rule 76(a), U.R.C.P.; Berry v. Moench, 8 Utah 2d 191, 331 P.2d 814.

HENRIOD, Justice (concurring).

I concur, but disagree with the concurrence of Mr. Chief Justice CROCKETT, not only as to much of what it says, but as to its place in this case. No matter discussed therein is germane to this appeal, and there is no relationship between such concurrence and any issue here that should burden this decision or the reader.