401 P.2d 315

**Pat M. Johnson FRENCH, Plaintiff and Appellant,**

v.

**Phillip T. JOHNSON, Defendant and Respondent.**

No. 10147.

Supreme Court of Utah.

April 23, 1965.

Horace J. Knowlton, Salt Lake City, for appellant.

W. R. Huntsman, West Jordan, for respondent.

HENRIOD, Chief Justice:

Appeal from an order releasing defendant from support money decreed for his children.

On March 18, 1954, Johnson was ordered to pay support money to his former wife for their child. He defaulted, and in February, 1964, 10 years later, plaintiff brought proceedings against him. She asks $5,300 for the 106 months' default. Defendant has resumed monthly support payments.

The district court relieved defendant of past payments because the plaintiff had been dilatory *in requesting* payments and producing her forwarding addresses to defendant.

Johnson defends by asserting estoppel or laches. Defendant relied on his wife's silence.[1]

The facts show no representations, either explicit or implicit, by plaintiff to defendant with respect to discontinuation of payments, and it is doubtful if such circumstance would be of prime importance. Mere silence over a period of time will not raise an estoppel where there is no legal or moral duty to speak.[2] The court did not condition the payments upon a request for such by plaintiff.

Both contestants rely heavily upon Larsen v. Larsen.[3] In that case this court sent the case back for findings of fact by the court with respect to future obligations. It has no application to the facts of this case.

Secondly, a decree awarding child support payments cannot be avoided by parent's conduct or agreement.[4] Support decrees are awarded and protected by the state

---

1. She may have been dead and very silent, but a marker establishing her last resting place hardly could be a monument to absolution from paternal responsibility.
2. "The * * * child support decree did justice between the parties. The extent of the duty of the appellee to support his minor children was definitively settled by that decree until altered or amended. There is no possibility of the original decree being obscured by the passage of time * * *." Morgan v. Morgan, 275 Ala. 461, 156 So.2d 147; Openshaw v. Openshaw, 105 Utah 574, 144 P.2d 528; Engling v. Edmondson, 175 Kan. 883, 267 P.2d 487.
3. 5 Utah 2d 224, 300 P.2d 596.
4. Defendant's "argument overlooks well settled legal principles to the effect that appellant's duty to support his minor children, and the amounts of such support, were imposed by a final decree of a court having full jurisdiction in the premises. The parents are without any warrant in law to later nullify such decree by mutual agreement between themselves so as to deprive the minor children of the support to which they are entitled under the decree of a court of competent jurisdiction. Such agreements are without consideration, and void as a matter of public policy." Morgan v. Morgan, 275 Ala. 461, 156 So.2d 147 and cases cited therein.
 "A parent may not by any act, conduct, or arrangement of whatever sort shift from his shoulders the legal responsibility and moral duty to support his minor child. It is an absolute, inalienable right enjoyed by the child which no form of contract between the parents, nor change of the domestic status

for its interest in children of severed marriages.

 That plaintiff's present husband was claiming defendant's child as a dependent in the Navy is inapropos here and cannot be the basis for reneging on a judicial decree and moral obligation. The claiming of a dependent does not affect the efficacy of the district court's support decree.

For the above reasons the judgment of the district court is reversed, with costs to plaintiff.

CALLISTER, J., concurs.

WADE, Justice (concurring):

I concur with Chief Justice Henriod's opinion.

However, there are two statements in the opinion which might be construed to be contrary to our holding in Larsen v. Larsen.[1] The opinion says: "In that case this court sent the case back for findings of fact by the court with respect to future obligations." Later the opinion says: "Secondly, a decree awarding child support payments cannot be avoided by parent's conduct or agreement."

or either of them, may effect"; Smith v. Smith, 125 Cal.App.2d 154, 270 P.2d 613, and cases cited therein. Also see Riding v. Riding, 8 Utah 2d 136, 329 P. 2d 878.

In the Larsen case the trial court ruled that equitable estoppel was not available as a defense for nonpayment of accrued support money for a minor child, and therefore made no findings of fact on that issue or on the issue of whether the support of the child by a third person (the mother's husband) was voluntary. There we concluded that the evidence would support a finding either way on those issues and remanded the case for a new trial thereon.

Since we conclude that the facts in this case show no representation by plaintiff to defendant with respect to discontinuance of support payments, there can be no doubt that mere silence over a period of time will not raise an estoppel issue under the facts here shown.

In the Larsen case we said:

"In Price v. Price [4 Utah 2d 153, 289 P.2d 1044], we held that because the state is interested in the child's welfare the parents cannot effectively release *future* payments of support money by agreeing with the other to that effect. However, this does not mean that a mother may not by her actions or representations, or both, preclude herself from recovering past due installments of support money to reimburse her for the money which

1. Larsen v. Larsen, 5 Utah 2d 224, 300 P. 2d 596, rehearing, 9 Utah 2d 160, 340 P. 2d 421.

she has spent for the support of the child. Where the father's failure to make such payments was induced by her representations or actions and where as a result of such representations or actions the father has been lulled into failing to make such payments and into changing his position which he would not have done but for such representations, and that as a result of such failure to pay and change in his conditions it will cause him great hardship and injustice if she is allowed to enforce the payment of such back installments, she may be thereby estopped from enforcing the payment of such back installments. * * *"

Since the facts in the Larsen case are entirely different from the facts in this case, I agree with Chief Justice Henriod's opinion that that case had no bearing on this question.

CROCKETT, Justice (dissenting):

Regrettably, I view the facts deducible from the record in a somewhat different light than they appear to my colleagues. This does not mean that I am unappreciative of the basis of the main opinion, nor of the difficulties involved where the payment under the decree had actually accrued. Neither do I disagree generally with the statement of the opinion that the provisions of a decree "cannot be avoided by a parent's conduct or agreement" as applied to *current* and *future* obligations. But this statement does not seem to make allowance for the fact that after one parent has actually supported a child for a period of time, the right of reimbursement then belongs, not to the child, but to the one who has furnished the support. In that regard I reiterate my agreement with Larsen v. Larsen, 5 Utah 2d 224, 300 P.2d 596 as Justice Wade has called attention in his concurrence.

I share the sympathy and concern which is naturally engendered in most everyone for the mother and child. Moreover, I offer no apology for, nor propose any defense for, any father who wilfully fails to meet his honest obligations in that regard. That these rights be safeguarded and enforced is of the utmost importance both to the individuals involved and to society. For these reasons matters involving child custody and support are equitable, in fact as sometimes stated, are equitable in the highest degree. Nevertheless, it must be remembered that the equities are not always all on one side, and that each situation should be dealt with on its own facts and toward the objective which is fundamental to all such proceedings, that of best serving the welfare of all concerned. When viewed in that light the circumstances may well be such as to justify the court invoking its equitable power and refusing to enforce immediate collection of a large accumulated debt.

The background out of which this marriage arose can be spared here. It is sufficient to say that the divorce shortly thereafter fixed the responsibility upon the defendant to pay $50 per month to the support of the child. Some salient facts subsequent to the decree are set forth in as brief a way as possible by excerpting portions of the findings of fact:

That the defendant diligently complied * * * and did pay the sum of $50 per month to the clerk * * * for approximately two years * * * that his last payment * * * was returned by said clerk to the defendant with the notation "no one known at above address and no forwarding address was left."

* * * That the child has been claimed by the husband [the second husband, Mr. French] as his own child and had adopted his name * * * [and] received the allotments * * * granted by the government of the United States.

* * * That she [plaintiff] made no effort of any kind to inform the clerk * * * as to her whereabouts * * * and has continuously, since 1953, failed and neglected to ascertain the whereabouts of the defendant or his address.

* * * That the plaintiff has been dilatory and lax and was guilty of laches. * * *

* * * That the earning capacity of the defendant has greatly decreased in the ensuing years.

It should be emphasized that the facts just recited do not relieve the defendant of his obligation to support his child, nor do they discharge the debt which has accumulated. They go only to the question of whether he is in contempt; and whether the large and insuperable judgment of $5,300 should be entered and made enforceable against him at this time.

For brevity and to spare repetition in our printed reports, I refer to my concurring opinion in Wallis v. Wallis, 9 Utah 2d 237, 342 P.2d 103, and authorities therein cited which sets forth my views as to the duty and prerogative of the trial court in such a case.

Upon the basis of my view of the law as expressed therein and the considerations hereinabove set forth, I am inclined to think that the action of the trial court in the instant case was well advised; and that in all likelihood in the long run it would be more beneficial to all concerned and particularly for the support and welfare of the child.

McDONOUGH, J., concurs in the dissenting opinion of CROCKETT, J.