June H. Borowitz, n/k/a June R. Howell, Plaintiff-Appellant, v. David Borowitz, Defendant-Appellee.

(No. 58655;

First District (3rd Division)—April 18, 1974.

Davis, Jones & Baer, of Chicago, for appellant.

Bentley, Campbell, DuCanto & Silvestri, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is a post-divorce decree proceeding. The plaintiff-wife appeals from a judgment of the trial court terminating her award of monthly alimony from the defendant-husband that was established under the terms of the 1962 decree of divorce.

In this appeal the plaintiff demands reversal of the order of termination because: (1) the termination impaired the settlement contract entered into by the parties at the time of their divorce and is therefore in violation of Federal and State constitutional provisions forbidding the impairment of contracts; (2) the trial court committed error in receiving evidence as to facts occurring prior to the date of the decree of divorce; and (3) the trial court abused its discretion in terminating the alimony. The defendant responds that there was no violation of constitutional provisions in the trial court's termination of alimony, that the trial court considered only proper and relevant evidence in reaching its decision, and that there was no abuse of discretion by the trial court as there was a material change in circumstances of the parties justifying the termination.

We reverse and remand.

The relevant facts adduced in the trial court are as follows: Plaintiff and defendant were married on August 7, 1959, at which time she was 49 years of age and he was 53. This was a second marriage for both parties as the plaintiff's prior marriage of 26 years had ended in divorce and the defendant was widowed. Both parties have adult children as a result of their prior unions and no children were born or adopted during their marriage to each other.

After approximately 2½ years of marriage, the parties were divorced. On January 2, 1962, a decree of divorce was entered which also incorporated a marital settlement agreement which provided that the defendant was to pay alimony to the plaintiff in the amount of $1,333.33 a month, and further that he was to create a certain trust to provide reduced monthly payments to the plaintiff in the event the defendant should predecease the plaintiff.

For some 10 years the defendant carried out his obligation under the decree, and by January 26, 1972, the plaintiff had received a total of $160,000 in alimony payments. On that date the defendant, then 66

years old and remarried, filed a petition seeking a reduction, and later complete termination, of the required amount of alimony due the plaintiff. The plaintiff answered and counter-petitioned alleging her need for an increased amount of support from the defendant by reason of the substantial increase in the cost of living since the original proceedings in 1962.

There followed extensive hearings on the petitions, during which substantial testimony and documentary evidence were introduced. In support of his petition, and over the objections of the plaintiff, the defendant introduced evidence as to the plaintiff's financial condition that included items of value that she had received from him prior to and during their marriage, in addition to the evidence of alimony paid since the entry of the decree. Over the plaintiff's objections that this evidence was not relevant or material to a post-decree modification proceeding, the defendant showed that he had given her certain valuable gifts including a promissory note in the amount of $30,000 which he fully paid after their marriage, that during their marriage he had given her jewelry and furs in the amount of $30,000, and 100 shares of stock valued at approximately $18,500, all of which she kept upon their divorce. In addition the defendant testified that he spent in excess of $100,000 in renovation of an apartment for their use as their home during the marriage. All of this was in addition to the $160,000 in alimony the defendant had paid since the divorce.

Through the testimony of the plaintiff and the introduction of certain of her tax returns it was disclosed that in 1971 she possessed approximately $100,000 in stocks and bonds, received approximately $4,500 in dividends and $1,100 in interest for the year, had approximately $20,000 in cash deposits in various banks, and equity in two homes she owned in Florida. On the basis of all of this evidence the trial court concluded that the plaintiff's net worth was then $120,000 to $140,000.

The evidence as to the defendant's financial condition was as follows. His chief asset was 80% ownership of a closely held family enterprise, Bradley Manufacturing Company. The net worth of this company declined from 1962 to 1971, but showed a projected increase for 1972 to an amount of $261,584. The defendant's salary as president of the company was $85,000 per year for the years 1963-69, $75,000 for the year 1970, and $65,000 for the year 1971. The defendant's 1971 income was increased by $35,000 which was income from a partnership that held title to certain real estate. There was further evidence adduced that indicated the defendant was a wealthy man who travelled extensively for business purposes and maintained memberships in exclusive private clubs.

The plaintiff also introduced defendant's income tax returns which showed that in 1961 the defendant's total taxable income was approximately $106,730, and in 1971 the total was $105,410. This, the plaintiff contended, indicated that there had been no change in circumstances which warranted a reduction or termination of alimony.

In support of her counter-petition for an increase in alimony the plaintiff testified that due to the increased cost of living her needs were then $2,340 per month. This was supported by a detailed monthly budget that, she testified, reflected her current needs.

Following the hearings the trial judge entered a lengthy judgment order in which he made extensive findings of fact and concluded that due to the substantial sums paid by defendant to plaintiff, the passage of 11 years since the entry of the original decree, the fact of the defendant's age, consideration of the net worth of the parties and all the other evidence adduced, there had been sufficient change in circumstances to warrant a termination of alimony to the plaintiff. The judgment ordered the defendant to phase out the payments over a 6-month period of lessened payments and then cease payments altogether. The judgment order also eliminated the requirement that the defendant maintain the trust that was provided for in the original decree.

In this appeal the plaintiff first contends that the order of the trial court eliminating alimony violated article I, section 10 of the United States Constitution, and article I, section 16 of the Illinois Constitution, providing that no law impairing the obligation of contracts shall be passed. The plaintiff argues that the marital settlement agreement providing for the payment of alimony entered into by the parties on December 8, 1961, and later incorporated into a decree of divorce, was a contract. And further, because the trial court was not empowered to terminate alimony until 1969 when section 18 of the Divorce Act (Ill. Rev. Stat. ch. 40, par. 19) was amended to provide such relief, the reliance on the 1969 amendment to modify a contract entered into in 1961 impaired the pre-existing contract obligation and therefore violated the above constitutional provisions.

We need only say in regard to this issue that in view of our holding that the complete termination of alimony in the instant case was unjustified on other substantive grounds, there will be no need to pass upon the constitutional issue raised by the plaintiff.

The plaintiff next argues that the trial court violated the principle of res judicata when it admitted and relied upon evidence of the plaintiff's financial condition prior to and during her marriage to the defendant. The plaintiff contends that in an application for modification or termination of support the only inquiry should be whether sufficient cause has

intervened since the entry of the decree to authorize the court to change the allowance. We agree with the plaintiff that this is a correct statement of the law (*Cole v. Cole* (1892), 142 Ill. 19, 31 N.E. 109; *Marriott v. Marriott* (1952), 347 Ill.App. 372, 106 N.E.2d 876); however, we do not agree with the plaintiff's suggestion that the use of this evidence in the instant case requires a reversal.

■■ The evidence objected to by the plaintiff (financial transactions between the parties prior to and during the marriage), when considered in the context of the entire case was admitted by the trial court in its effort to do justice in the case by attempting to accurately determine the situation of the parties at the time the decree was entered. We must also agree with the defendant that when a court is to determine whether there has been a change in circumstances since the entry of decree it must have reasonable latitude in inquiring into the income, assets and standard of living of the parties at the time of and immediately prior to the entry of the original decree. Since the marriage in the instant case was of such short duration it was not unreasonable for the court to examine the financial condition of the parties for a period of time before the decree.

We are not unmindful of the fact that the trial court not only admitted, but also relied on some of this predecree evidence of financial condition in arriving at its decision. However, this evidence, some of which is recited as findings of fact in the judgment order, when read in the context of the entire judgment order, were not the significant findings upon which the court made its decision. The final numbered paragraph of findings (par. 26) in the judgment order recites four facts occurring since the entry of the decree to justify the court's order of termination. That paragraph recites that the substantial sums already paid by the defendant to plaintiff, the passage of 11 years since the decree, coupled with the age of the defendant and the net worth of the parties, constitutes a sufficient change in circumstances to justify termination. Under the law in Illinois these factors are clearly valid considerations to be taken into account by a court in a modification proceeding. *Herrick v. Herrick* (1925), 319 Ill. 146, 153, 149 N.E. 820; *Warren v. Warren* (1963), 40 Ill.App.2d 286, 189 N.E.2d 401.

The plaintiff next argues that the facts of the instant case do not justify the ordered termination and therefore the trial court has abused its discretion. Conversely, the defendant argues that the facts do justify the termination. Our study of the facts and circumstances causes us to agree with the plaintiff that a complete termination of support was improper; however, we find that the facts present a case where a modification of the alimony requirements was clearly in order.

We would initially point out that there was no significant evidence here as to any change in circumstances as to the defendant's ability to continue paying the support called for in the decree. The evidence indicated that the defendant's income in 1971 was approximately the same as it was at the time the decree of divorce was entered. However, the husband's continuing ability to pay the decreed alimony is not the only factor that courts consider in determining whether a change in circumstances has occurred which justifies a modification of the original award.

One factor considered by the courts on petitions for modification is the age of both of the parties. (*Byerly v. Byerly* (1936), 363 Ill. 517, 525, 2 N.E.2d 898.) At the time the trial court entered the order terminating alimony in this case the plaintiff was 62 years old and the defendant was 66. The court found that the defendant desired to retire from active employment and he enjoyed neither an employment contract nor pension plan.

Another factor taken into consideration as effecting a material change in circumstances of the parties is the amount already paid to plaintiff from defendant since the decree was entered. (*Tan v. Tan* (1972), 3 Ill.App.3d 671, 675, 279 N.E.2d 486.) In the instant case the trial court found that the monthly payments made by defendant over a period of 10 years amounted to a total paid to the plaintiff of approximately $160,-000.

Another important consideration in the instant case is the brevity of the parties' marriage. Obviously, the longer a woman has lived with a man and performed the functions which one normally expects from a wife, the greater is her claim to support. (*Ferguson v. Ferguson* (1955), 125 Ind. App. 596, 125 N.E.2d 816; *Thompson v. Thompson* (1960), 222 Or. 505, 353 P.2d 241; *Tan v. Tan, supra.*) The length of a marriage is an important consideration in a number of respects. In the instant case both parties had past, lengthy marriages in which they raised their respective children to maturity. The parties married long after the defendant had established himself in business and the fact that the plaintiff did not contribute significantly to the defendant's wealth or earning potential is a factor to be taken into consideration. (*Volid v. Volid,* (1972), 6 Ill.App.3d 386, 391, 286 N.E.2d 42.) The fact that this was a middle-aged, second marriage of short duration for both parties distinguished the instant case from such cases as *Johnston v. Johnston* (1972), 9 Ill.App.3d 247, 292 N.E.2d 39, wherein the parties were married some 29 years before divorce, leaving minor children in the custody of the middle-aged wife. The facts presented in the instant case and the facts in *Johnston* and similar cases, are different in almost every respect.

The fact that the wife has acquired a substantial amount of property, or that her property has increased in value, has also been held to be an important consideration in determining whether and to what extent the decree should be modified. (*Loeb v. Loeb* (1972), 6 Ill.App.3d 892, 894, 286 N.E.2d 790; *Bunde v. Bunde* (1955), 270 Wis. 226, 70 N.W.2d 624; *Bissell v. Bissell* (1971), 291 Minn. 348, 191 N.W.2d 425; *Douglas v. Douglas* (1968), 109 N.H. 41, 242 A.2d 78.) Where both the husband and wife are in receipt of income or possess valuable property, the wealth of the wife as well as the husband should be taken into consideration. (*Cahill v. Cahill* (1942), 316 Ill.App. 324, 336, 45 N.E.2d 69; *Byerly v. Byerly, supra.*) In the instant case this fact is perhaps the most important one weighing in favor of a modification of the original award. After an extensive hearing the trial court found that the net worth of the plaintiff was a substantial sum, consisting of cash, stocks and securities, and equity in real estate.

We, also, take notice of the recent emancipation of women socially and economically. We note that this fact has recently led courts to criticize the general rule that a husband is responsible for maintaining his wife at a standard of living to which she became accustomed during marriage. In *Volid v. Volid, supra,* the court commented:

> "When the rules regarding the husband's duty of support were first enunciated, the roles of a husband and wife were more rigid and defined. The husband worked and brought income into the family while the wife maintained and managed the household. The woman generally did not seek outside employment partly, because 'her place was in the home', and partly because few opportunities for meaningful employment were available. Married women nowadays are increasingly developing career skills and successfully entering the employment market. Where a woman is trained, healthy, and employable, and where a woman's efforts have not contributed to her husband's wealth or earning potential, the necessity for an alimony award upon breakup of the marriage is not great." (6 Ill.App.3d at 391.)

We are aware that these comments do not fit perfectly the situation presented in the instant case; however, there are other cases embodying a similar point of view that also articulate exceptions to the general rule that a wife should be supported at the same standard of living she was accustomed to during her marriage. *Vanderbilt v. Vanderbilt* (1955), 207 Misc. 291, 138 N.Y.S.2d 222, *aff'd*, 147 N.Y.S.2d 125, *aff'd*, 1 N.Y.2d 342, *aff'd*, 354 U.S. 416, is a divorce case similar to the instant case, in that there was evidence that the parties, while married, had travelled and entertained extensively, becoming accustomed to a lavish standard of

living. In determining the amount of alimony to be awarded to the wife the court stated that although the wife would not be limited to only such sum as would prevent her from becoming a public charge, she was, on the other hand, no longer privileged or required, as she had been while married to her husband, to accompany him on his extensive trips and voyages and in his lavish entertainment and mode of living, all of which necessitated large expenditures for her clothes, travel and hotels. The court concluded that she was not entitled to continue to be maintained in the standard of luxurious life and travel which she enjoyed during the marriage.

■■ Contrasted with these considerations are the facts that the plaintiff here is in excess of 62 years of age and untrained for any employment. Reviewing all of the factors in this case, we are inclined to believe that although a complete termination of alimony to the plaintiff was an abuse of the trial court's discretion, the continued payment of $16,000 a year to a woman of the plaintiff's means, after her brief marriage to the defendant, is not justified. The purpose of alimony is to furnish support to the wife or to contribute to her partial support, and not to visit punitive damages on the husband for any supposed misconduct. *Buehler v. Buehler* (1940), 373 Ill. 626, 632, 27 N.E.2d 466; *Hudspeth v. Hudspeth* (1970), 122 Ill.App.2d 341, 258 N.E.2d 584.

For these reasons we reverse and remand the cause to the circuit court with directions to vacate and set aside said order. It is further ordered that after any further proceedings that the court may determine necessary, it enter an order of modification not inconsistent with this opinion, such order to be retroactive to the date of the judgment order herein reversed.

Judgment reversed and remanded.

DEMPSEY and MEJDA, JJ., concur.