(No. 18290.—)

ALVINA GERCKE, Plaintiff in Error, *vs.* WILLIAM GERCKE, Defendant in Error.

*Opinion filed October 25, 1928.*

E. W. ADKINSON, for plaintiff in error.

ZIV, LOOMIS & SILVERTRUST, for defendant in error.

Mr. COMMISSIONER CROW reported this opinion:

Plaintiff in error filed a bill for divorce from defendant in error, charging extreme and repeated cruelty. She also asked for temporary and permanent alimony and for solicitor's fees, and for an injunction restraining defendant from

selling, assigning or otherwise disposing of his property and from collecting money due him on installments for the sale of certain real estate described in the bill. On the coming in of the answer defendant was granted leave to file a cross-bill. It stated facts as grounds for setting aside the deeds made to him and his wife in joint tenancy, and to require her to refund money drawn by her out of banks, deposited in their names and subject to checks drawn by either. Issues were formed on the original and cross-bills and evidence was heard by the chancellor on the issue as to divorce. A decree for divorce was rendered in favor of plaintiff in error. The cause was referred to a master to take and report the evidence, with his conclusions on the issues as to property rights presented by the pleadings in the cause. On the hearing on exceptions to the master's report it was approved and a decree entered in accordance therewith against plaintiff in error, defendant to the cross-bill. To reverse the decree she brings the record to this court by writ of error. Frank Spalding, who held the legal title to the property, did not appeal.

Substantially the decree found that on January 18, 1917, William Gercke and Alvina Gercke were married and lived together as husband and wife until December 11, 1923, when she locked the door of the premises in which they were living and compelled him to live elsewhere. At the time of their marriage he was the sole owner, in fee simple, of certain premises, one described in the abstract as the 3104 Francisco avenue property, the other as the 3953 North Albany avenue property. The Albany avenue property was sold by Mr. and Mrs. Gercke, under an installment contract, to John T. Zahnen, and there was $1000 due on the contract at the time of the hearing before the master. Previous to the marriage Mrs. Gercke owned real estate known as 2951 North Oakley avenue, which was traded for the 2948 Fletcher street property. Complainant and defendant made an agreement that after their marriage the three pieces

of real estate should be placed in their names as joint tenants and not as tenants in common, and the conveyances were made accordingly. At the time of their marriage, and previous thereto, Gercke owned and possessed twenty acres of land in the State of Florida, on which there was an $1800 mortgage, and twenty acres of land in the State of Michigan. After the marriage he desired to convey the Michigan property to his son by his first marriage. Mrs. Gercke joined him in deeding that property. At the time of the transfer she protested against deeding the property to his son unless Gercke would sign a contract providing that the Fletcher street property should at the death of Alvina, should she die before him, be conveyed in joint tenancy to Frank Spalding, her son by a former marriage, and to Gercke. He agreed to those conditions. Gercke could not readily understand, and did not speak, the English language. Upon signing the papers the conversation between him and Alvina with regard to it was in the German language, but the conversation between her and the agent who conducted the transaction was carried on in English, which Gercke did not understand. Instead of being an agreement to transfer in joint tenancy, as they had agreed, a deed from her and Gercke was made for the Fletcher street property to Spalding, as grantee. While the transfer was signed by Gercke, he believed it to be a contract for a conveyance as they had agreed.

For some time previous to the separation of the parties accounts were kept in their joint names in the Immel State Bank and in the Lake View Trust and Savings Bank, in Chicago. From April 4, 1921, to and including November 4, 1921, deposits aggregating $1027.05 had been placed to their account in the Immel State Bank. Gercke had provided most, if not all, of the money. On November 5, 1923, $1006 was drawn from the account, leaving a balance of $21.05, which was drawn out on December 3 and the account marked "closed." The withdrawals were all made by

Mrs. Gercke. Some time previous to the separation of the parties the account in the Lake View Bank up to November 5, 1923, aggregated $805. On that date a withdrawal of $500 was made by Mrs. Gercke. On November 6 she withdrew $200 and on December 1 $100, leaving a balance of $5, which was withdrawn on December 3, 1923. Her bill was filed December 6, 1923. She collected all the rents on the Fletcher street property up to the time of filing the bill. About 1920 the Gerckes procured an extension of the loan which they had on the Fletcher street property, in the name of William and Alvina Gercke and not of Frank Spalding. She signed all the rent receipts to the tenants in her name. Spalding's name appeared nowhere in any of those transactions. Of the money withdrawn from the two banks she spent the sum of $1869, nearly all of which was for her own private use. She bought two washing machines, aggregating $289, the first of which seems to have been returned. She bought a cemetery lot for $200, which she testified was for herself. She paid her attorney $800 and paid other sums for her personal benefit. One item was a coat for Gercke, $45. So far as the record shows, that is all he ever received.

On cross-examination Spalding testified that the deed to him was kept in his overcoat pocket in a closet in his mother's home, where he lived. She testified to the same effect. It had been kept there since it was delivered. It was not filed for record until about a week before her bill was filed. He testified that he told his mother, at the time, he was going to have it recorded; that he knew she was going to file a bill for divorce, but that he "did not think about that." She filed the bill within a week after it was recorded. Her lawyer, to whom she had paid $800 of Gercke's money, took the deed to the recorder's office. It does not appear that he was connected with the trial of the case and he is not an attorney of record in the case in this court.

The real estate agent who made the deed to Spalding had never transacted any business for Gercke previous to that time. He wrote and took the acknowledgment of the deed to Spalding. He testified "that we usually informed people of joint tenancy title when we transact the deal;" that he drew the deed to Spalding—made the whole document himself; that the grantor signed the paper and he took the acknowledgment as a notary public; that he had an independent recollection of the conversation that took place with reference to the deed. He translated it from English into the German language. He did not read the whole document to Gercke but "explained to him what it was, in German." He did not "really recall what reply Gercke made." When the document was signed Mr. and Mrs. Gercke were there. He did not remember whether there was anybody else present, nor whether anything was said with reference to a joint tenancy with Spalding, nor whether any of the matters to which complainant testified occurred or conversations were had at the time the deed to Spalding was made. He did not mean to say that the conversations testified to were not had but did not know what was said. Subjects of conversations testified to by complainant as having occurred in his presence he did not remember or did not recall. He was what Wharton characterizes as a *non mi recordo* witness, upon whose testimony little reliance can be placed. He did not read the "whole document to Gercke but *explained* to him what it was." What explanation he made of the joint tenancy clause he does not say. If he had read or explained it in the German language, which Gercke understood, Gercke would have known it was not a contract to execute a deed in joint tenancy with Spalding if his mother should die. Her testimony was that he was willing to make an agreement to convey to her son, but he was not asked to convey presently in joint tenancy. He was only asked to make a contract to convey. That was the arrangement between her and Gercke

before they were married, and it was afterward executed. He apparently agreed readily, on that account, to make the contract to so convey to Spalding if she preceded her husband in death. But that was not done. All of the evidence and every circumstance attending the transaction show it was not only iniquitously conceived but unlawfully executed. No useful purpose can be subserved by an extended discussion of the evidence. It amply supports the decree. Indeed, it is not contended that the evidence is insufficient.

It is contended that the decree is in violation of the statute relating to dower and therefore it should be reversed. In support of the contention counsel cites *Smith* v. *Kneer,* 203 Ill. 264, *Zimmerman* v. *Zimmerman,* 242 id. 552, and sections 14 and 16 of the Dower act. The first section cited provides that if a husband or wife be divorced for the fault or misconduct of the other, he or she shall not thereby lose dower nor the benefit of jointure. Section 16 provides that no judgment or decree recovered by one spouse against the other shall prejudice the right of dower or jointure, or preclude the right of recovery thereof if otherwise entitled thereto. The tenancy of the parties to this suit is not a jointure within the meaning of the sections referred to. Bouvier defines jointure as a "competent livelihood of freehold for the wife, of lands and tenements, to take effect, in profit or possession, presently after the death of the husband, for the life of the wife at least." Among the other qualities of a good jointure, it must be made in satisfaction for the wife's whole dower and not a part of it only. The contention of counsel is based on a misapprehension of the distinction between a joint tenancy and jointure. The doctrine of jointures is based on the common law and has not been changed by statute. Joint tenancies, existing at the common law, have been changed and regulated by chapter 76 of our statutes, but there is nothing in that chapter that affects the question now under consideration. But section 17 of the Divorce act expressly au-

thorizes the court, upon granting a divorce, if it appears that either holds the title to property equitably belonging to the other, to compel a conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable.

It is contended that the court refused to grant complainant alimony and required her to refund all the money drawn from the bank. The divorce having been granted for the fault of defendant no valid reason is perceived for denying alimony. A solicitor's fee was allowed, and allowance of alimony rests upon no less an equitable basis. The account in the bank was a joint account, against which either might draw, but that fact is no warrant for either to withdraw all the funds and apply them to his or her exclusive use, as in this case. The evidence shows that complainant did withdraw the funds and deprived defendant of the use of any of them. She had the legal right, by virtue of the agreement, to do so, but she voluntarily went into a court of equity for relief and the court properly required her to make restitution. The court should have adjusted the personal property rights of the parties. In doing so, the allowance of alimony, as well as solicitor's fees, should have been made. An accounting of moneys taken by her from him should be taken if any have been received since the accounting, reasonable alimony allowed, and the remainder of the money in her hands belonging to defendant, if any, should be required to be refunded.

In all respects except as to alimony the decree of the superior court is affirmed. The decree is reversed as to that question and the cause remanded, with directions to enter a decree for the allowance of alimony.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*