HELEN BORG, Plaintiff-Appellee, v. PHILIP S. BORG, Defendant-Appellant.

(Nos. 60292, 60900 cons.; 

First District (4th Division)—October 8, 1975.

*Rehearing denied November 5, 1975.*

Jerome Berkson and Beermann, Swerdlove, Woloshin & Barezky, both of Chicago, for appellant.

Bernard Kaufman and Schiller and Schiller, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Helen Borg, initiated this action on October 10, 1972, by filing her complaint for divorce in the Circuit Court of Cook County against the defendant, Philip S. Borg, on the ground of mental cruelty. On September 13, 1973, the court ordered him to submit to a complete audit of his books and records and ordered him to take all necessary steps to submit the books and records of two companies of which he was a 50% owner, all at his own expense. When he failed to comply with the order, the plaintiff filed a petition for a rule to show cause why he should not be held in contempt of court. On January 16, 1974, the court entered an order finding him in contempt of court and sentenced him to 10 days in the Cook County Jail or until he purged himself of contempt. On February 14, 1974, the court denied the defendant's motion to reconsider the contempt order.

The defendant appeals from the order of January 16, 1974, in which he was found to be in contempt of court, and from the order of February 14, 1974, in which the court denied his motion to reconsider the con-

tempt order. Subsequently, on July 25, 1974, the court ordered the defendant to pay $3500 to defend the appeal, and the defendant also appeals from that order. Both appeals have been consolidated.

The issues on appeal are whether the trial court abused its discretion in finding that the defendant was in contempt of court for failure to obey a previous discovery order, and whether the award of $3500 in attorneys fees was improper.

The parties were married on June 20, 1942, and cohabited together as husband and wife until either March or December of 1970. They continued to live under the same roof until August 22, 1972. Two children were born of the marriage, a boy who died in October of 1971, at the age of 25, and a girl who was born in April of 1950.

The plaintiff filed her complaint for divorce on October 10, 1972. The defendant filed his answer and filed a two-count counter-complaint for divorce on the ground of mental cruelty and for partition of the marital residence.

On December 12, 1973, the plaintiff filed an amended complaint changing her cause of action to separate maintenance in the first count; alienation of affections against another defendant in the second count; injunctive relief against both defendants in the third count; and for imposition of a constructive trust in the fourth count. The defendant answered Count I, moved to strike and dismiss Count III, and moved to dismiss Count IV.

On May 15, 1973, the plaintiff filed a Petition for Audit and Auditor's Fees covering all the books and records of Borval Packaging Company and Aetna Screw Products Company, a partnership and corporation respectively, in which the defendant held 50% interests. In his reply to the petition the defendant stated the plaintiff already had a full, complete, and accurate picture of the financial condition of the partnership and corporation, as well as his personal financial condition, because of the extensive records he had already provided. He asserted that the demands of the plaintiff were solely for the purpose of harassment.

In her answer to his reply, the plaintiff denied her demands were for purposes of harassment and stated they were made solely for the purpose of giving her sufficient discovery to fairly present her case at trial.

On September 13, 1973, the court ordered:

(1) That the defendant, Philip Borg, submit to a complete audit of his books and financial records by accountant Bernard Davis, and submit to him any and all supporting documentation to complete said audit.

(2) That the defendant, Philip Borg, take all necessary steps to submit the books and financial records of Borval Packaging Com-

pany, and Aetna Screw Products Company to Bernard Davis C.P.A. for a complete audit, together with any supporting documentation necessary to complete said audit.

(3) That defendant pay the costs of the audits ordered herein.

The defendant refused to submit the books and records, and on October 2, 1973, the plaintiff filed a petition for a rule to show cause why he should not be held in contempt of court for failing to comply with the order of September 13, 1973.

In his reply to the petition the defendant stated, *inter alia,* that the provisions of the order of September 13, 1973, constitute an abuse of discovery procedures under Supreme Court Rule 201(c)(1), that the defendant had previously submitted all relevant data, and that the remaining partner and stockholder of the business entities made strong objections to him concerning the release of the books and records of the respective companies and directed him to refrain from turning over the books and records until further order of the court.

On October 26, 1973, Aetna Screw Products, Borval Packaging Company, and Frank Valerio petitioned the court for leave to intervene in the cause pursuant to section 26.1 of the Illinois Civil Practice Act. They attached a motion to secure a protective order to prevent the books and records of Borval and Aetna Screw Products from being turned over to the plaintiff.

On January 9, 1974, the attorney for Frank Valerio wrote a letter to the attorney for the defendant informing him that an offer had been made to the plaintiff whereby the books and records would be turned over provided the names of certain customers would be blocked out. There was a fear that Mrs. Borg would use the information to put the defendant at a competitive disadvantage because she was acquainted with a substantial competitor. This proposal was rejected by the plaintiff.

On January 14, 1974, the defendant filed his answer to the petition for a rule to show cause by stating that Frank Valerio refused to turn over the books and records to him and refused to allow him to submit them to any outside auditor.

On January 16, 1974, the court entered an order finding the defendant to be in contempt of court and sentenced him to ten days in the Cook County Jail or until he otherwise purged himself of contempt to the satisfaction of the court. On February 1, 1974, the defendant filed a motion to reconsider the contempt order which was denied by the court on February 14, 1974.

■■ The defendant contends the court abused its discretion in finding him to be in contempt because his failure to comply with the discovery

order was not wilful and contumacious, which the parties agree, is the applicable standard for a finding of contempt. (*Wick v. Wick* (1960), 19 Ill.2d 457; *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill.2d 180.) Supreme Court Rule 219(c) (Ill. Rev. Stat. 1971, ch. 110A, § 219 (c)) provides that contempt proceedings may be brought against any party who "unreasonably refuses to comply with any provision of Rules 201 through 218, or fails to comply with any order entered under these ·rules."

The defendant argues his failure to comply with the order of September 13, 1973, was not unreasonable because Valerio refused to allow him to turn over the books of the companies to the plaintiff for fear that the disclosure of certain information might be prejudicial and because the relevant financial information had already been provided to the plaintiff.

Supreme Court Rule 214 provides for the discovery of documents and Supreme Court Rule 201(b)(1) authorizes broad discovery requiring full disclosure between litigants "regarding any matter relevant to the subject matter involved in the pending action * * *." However, Supreme Court Rule 201(c)(1) limits the breadth of discovery in certain situations by providing for a protective order as follows:

"(c) Prevention of Abuse.

(1) *Protective Orders.* The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."

Here, the defendant argues his interests will be prejudiced if certain business matters are disclosed to the plaintiff because she is acquainted with a business competitor. He invoked Supreme Court Rule 201(c)(1) in his reply to the plaintiff's petition for a rule to show cause filed October 24, 1973, stating that the order of September 13, 1973, constituted an abuse of discovery procedures. The intervenors also filed a motion for a protective order which was denied by the court. Then in his motion to reconsider the contempt order the defendant detailed to the court the compromise offer for the.production of the documents referred to in the letter of January 9, 1974:

"That Philip Borg reoffers and asks the court to consider the testimony and letter of January 9, 1974, that he is willing to offer books and records of the corporations, partnerships, and his personal information with trade secrets, customer lists, names of parties to contracts blacked out * * *." .

. · In the case of *People ex rel. General Motors Corp. v. Bua* (1967), 37

Ill.2d 180, the court found that an order for the production of certain materials was too broad: the accident upon which the plaintiff's complaint was based involved a 1961 Corvair automobile. The court held it was an abuse of discretion to order the production of complete records for Corvair model years through 1965 in the absence of a showing of relevancy or materiality. The court noted that the production would require substantial expense, labor, and a certain degree of business disruption as well as the possibility of breaching the security of trade secrets.

The defendant also argues that his failure to comply with the order of September 13, 1973, was not unreasonable because the relevant financial materials had already been provided to the plaintiff. When the petition for audit was filed on May 15, 1973, the plaintiff's attorney had already received 28 documents relating to the financial condition of Borval, Aetna and the defendant. Those records included the following:

(1) The financial statement of Philip Borg as of November 16, 1972.

(2) Federal income tax returns for Aetna and Borval for the years 1966-1971.

(3) Illinois income tax returns for Aetna and Borval for the years 1969-1971.

(4) Financial statements for Borval and Aetna for the years 1969-1972.

In addition the defendant had presented the plaintiff with details of his personal checking account including checks and statements, insurance policies, and interests in a Keough Plan and Aetna's profit sharing plan.

The relevancy requirement of Rule 201(b) was determined by the Illinois Supreme Court in the *General Motors* case, where the court held there must be a showing of relevancy in a discovery sense when relevancy is not apparent from the face of the pleadings.

■■ The plaintiff contends the relevancy of the audit is apparent from the face of her pleadings because she asserted ownership interests in both the corporation and the partnership. She alleged that the businesses are "of a complex nature, requiring specialized skill and knowledge to evaluate and understand the defendant's precise interest therein, the amount of earnings and other benefits due the defendant, as well as any interest the defendant may have in deferred compensation, interest and retained earnings and other investments made by the aforesaid corporations on behalf of defendant and his business associates." She also demanded the audit "because of the various provisions of the Internal Revenue Code and the differing accounting methods which could be used in preparing these Returns, the plaintiff feels they do not represent

a complete and accurate picture of the financial condition of said companies or of defendant's interest in same."

We hold the court abused its discretion in finding the defendant to be in contempt of court because his refusal to comply with the discovery order was not unreasonable. The order of September 13, 1973, was too broad because the plaintiff did not sustain her burden of proving the relevancy of the information she sought in the audit and because the order required the production of materials which might be prejudicial to the defendant; therefore, the order must be reversed.

The plaintiff already had in her possession voluminous financial documents with respect to the defendant's personal and business interests. A review of this data leads us to the conclusion that the plaintiff had all the information she needed in order to have a clear understanding of the defendant's financial status.

The reasons given by the plaintiff for needing an audit were clearly speculative in nature and not based on facts. She requested the audit because of her "feeling" that the documents previously furnished were incomplete, because of various unnamed provisions of the Internal Revenue Code which "could" be used in preparing tax returns, and because of the "complex nature" of the businesses.

Had her request been anything other than a fishing expedition, she could have used interrogatories to ascertain specific facts where she deemed the available information inadequate. She most certainly would have accepted the offer of the materials with certain names blocked out. They could be of no use in analyzing various accounting systems or unraveling complex business arrangements.

■■ The defendant also contends it was error for the court to award attorneys fees of $3500 to the plaintiff to defend the appeal on the previous issues. He contends there was no evidence in the record with respect to the parties' relative ability to pay and there was no evidence as to the value of the legal services involved. He relies on the cases of *Dejoie v. Dejoie* (1972), 6 Ill.App.3d 381, and *Berg v. Berg* (1967), 85 Ill.App.2d 98, in which this court held that an award of attorney's fees is improper in the absence of evidence as to the abilities of the parties to pay and the reasonableness of the amount requested.

Section 15 of the Divorce Act (Ill. Rev. Stat. 1971, ch. 40, § 16) provides for the payment of attorneys fees on appeal as follows:

"In case of appeal by the husband or wife, the court in which the decree or order is rendered may grant and enforce the payment of such money for her or his defense and such equitable alimony during the pendency of the appeal as to such court shall seem reasonable and proper."

In *Landrey v. Landrey* (1957), 13 Ill.App.2d 202, 207, the court stated: "The allowance of attorney's fees in a divorce proceeding rests in the sound discretion of the chancellor, and unless such discretion is clearly abused its exercise will not be interfered with." In this case the record shows the trial judge was well informed about the relative financial positions of the parties. At the time of the order, the court had already been with the case for almost two years with numerous appearances by the parties. The orders of November 17, 1972, and January 12, 1973, reflect that the court had already adjudicated the issue of the plaintiff's financial dependency on the defendant. On July 25, 1974, the court referred to his extensive experience with the case and ordered the defendant to pay the plaintiff's attorneys the same fee for appellate expenses as he paid his own attorneys. We hold that there was no abuse of discretion in allowing attorneys fees and the order is affirmed.

For these reasons, the judgment of the Circuit Court of Cook County is reversed in part and affirmed in part.

Reversed in part and affirmed in part.

ADESKO and JOHNSON, JJ., concur.