GENE STOTLAR, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, *v.* NADA STOTLAR, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

Fifth District   No. 76-288

Opinion filed July 8, 1977.

G. MORAN, J., dissenting.

Don Johnson, of Hohlt, House, DeMoss & Johnson, of Pinckneyville, for appellant.

William G. Ridgeway, of Ridgeway & Decker, of Murphysboro, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff-counterdefendant, Dr. Gene Stotlar, appeals from certain property awards made by the circuit court of Perry County pursuant to its entry of a divorce decree in favor of the defendant-counterplaintiff, Mrs. Nada Stotlar. Mrs. Stotlar pursues a cross-appeal from the court's award of alimony and its refusal to award her attorney's fees.

Dr. Stotlar initiated the suit below by filing a complaint for divorce. Mrs. Stotlar answered his complaint and counterclaimed for divorce on the grounds of extreme and repeated mental cruelty. Mrs. Stotlar subsequently filed an amended counterclaim based upon the same grounds. In a bench trial conducted in the circuit court of Perry County, it was stipulated that Dr. Stotlar was dismissing his complaint and that the matter would be heard on Mrs. Stotlar's amended counterclaim and Dr. Stotlar's answer thereto. The trial court on July 8, 1975, entered a decree of divorce on Mrs. Stotlar's counterclaim and took all other matters under advisement for decision at a later date, after submission by the parties of written briefs and arguments.

The court entered a divorce decree on November 20, 1975, which disposed of the matters it had formerly reserved. By that decree, Mrs. Stotlar was awarded: (1) the marital home and premises which had been held in joint tenancy; (2) all shares of stock titled in her name; (3) a 1972 Thunderbird automobile and a 1972 Beachcraft Bonanza airplane; (4) several life insurance policies of which she was the owner; (5) one-half of the shares of stock in Dr. Stotlar's name and one-half of the bearer bonds in his possession less stocks and bonds of his choice valued at $17,500; (6) household furniture and clothing in her possession; (7) the custody of a minor child, Bill Stotlar; (8) $200 per month child support until Bill Stotlar reached 18 years of age; (9) one-fourth of the estimated income tax paid by Dr. Stotlar in 1975, for use on her 1975 tax return; and (10) $1,400 per month permanent alimony. The court also ordered each party to pay the balance of his or her respective attorney's fees and debts, and found that Mrs. Stotlar was the owner of a 1973 Cadillac titled in the name of her husband's medical partnership. Since the contentions in this appeal relate only to the propriety of the awards to Mrs. Stotlar, we shall not detail the substantial assets which were assigned to Dr. Stotlar by the decree.

Mrs. Stotlar filed a post-trial motion on December 18, 1975. On April 1, 1976, subsequent to a court-approved withdrawal of counsel, Dr. Stotlar, through his new attorney, filed a post-trial motion pursuant to section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 68.3). The trial court on April 22, 1976, granted a motion made by Mrs. Stotlar to strike or dismiss his motion because it was not timely filed and entered an order dismissing Dr. Stotlar's post-trial motion. The court also entered an order on the same day disposing of the points raised in Mrs. Stotlar's post-trial motion. That order amended certain provisions of the November decree in order to make them more clear or factually correct; it also added an additional finding and an order on matters not previously brought to the court's attention.

The record reveals that the instant divorce decree dissolved a marriage of 23 years duration. When the parties were first married, Mrs. Stotlar was teaching school and Dr. Stotlar was completing his medical internship at a St. Louis hospital. Dr. Stotlar was thereafter inducted into the military and served in Europe until 1955. The first of two children, Richard, was born in 1954 while the couple was in Germany. A second son, Bill, was born in 1958.

Since the Stotlars' return from Germany in 1955, Dr. Stotlar has been engaged in practicing medicine in Pinckneyville, Illinois in a partnership designated "Medical Arts." Dr. Stotlar's partners were his brother, Dr. James Stotlar, and Dr. Gilbert Edwards. Dr. Edwards retired around 1965 and Dr. James Stotlar died in May 1975. Dr. Stotlar was therefore engaged as a sole practitioner at the time of the trial. Dr. Stotlar's income

for the three years immediately preceding trial exceeded $100,000 per year; however, he testified that he anticipated a substantial drop in income in the future due to his brother's death. Mrs. Stotlar's income over this same period consisted of remuneration for substitute teaching which she engaged in on the average of two or three days each year, and yearly dividends earned on stock titled in her name, estimated at between $1200 and $2000.

Substantially all of the income of both parties was placed in their joint checking account. The parties acquired considerable property, both real and personal, over the course of their marriage. Most of this property, whether in Dr. Stotlar or Mrs. Stotlar's name, was purchased by means of the joint checking account. Additional facts will be supplied whenever necessary to aid the resolution of the contentions on appeal.

More specifically, Dr. Stotlar contends that the trial court erred in: (1) finding that Mrs. Stotlar had "special equities" in certain stocks, bonds and real estate owned by Dr. Stotlar; (2) allocating one-fourth of Dr. Stotlar's estimated income tax payments for 1975 to Mrs. Stotlar; (3) awarding Mrs. Stotlar a one-half interest in certain Air Illinois stock; and (4) striking his post-trial motion made pursuant to section 68.3 of the Civil Practice Act.

Mrs. Stotlar contends that the trial court's denial of her request for attorney's fees was an abuse of discretion and that the trial court's periodic alimony award was insufficient and should be increased.

■■ Dr. Stotlar contends that the trial court erred in dismissing his post-trial motion because it was not timely filed. His motion of April 1, 1976, clearly indicated that it was made pursuant to section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 68.3). Section 68.3, at the time pertinent to this appeal, stated that any party may file a motion, "* * * within 30 days after the entry of the decree or judgment or within any further time the court may allow within the 30 days or any extensions thereof * * *." Dr. Stotlar's motion, which was not subject to any extensions of time by the court, was filed approximately 130 days after entry of the divorce decree and, therefore, not timely under the express terms of section 68.3. Dr. Stotlar argues, however, that the trial court had discretionary power, which it abused, to allow his motion by considering it "amendatory" or "supplementary" to the timely post-trial motion of Mrs. Stotlar. He directs our attention to two cases as authority for this proposition, *City of Chicago v. Greene*, 47 Ill. 2d 30, 264 N.E.2d 163, and *City of DeKalb v. Anderson*, 22 Ill. App. 3d 40, 316 N.E.2d 653. We have examined the aforementioned cases and find that they do not support his argument. Those cases do not suggest that a party may choose to ignore the time provision of section 68.3 and rely upon the diligence of his opposing party in complying with the rule to provide him with extra time

to consider grounds for post-trial relief by filing a motion which is "amendatory" or "supplementary" to his adversary's motion. In both of these cases, the party whose motion, made after the 30-day period, was considered as an amendment or supplement had filed a timely post-trial motion in the first instance, and the subsequent motion was considered as amending his own prior motion. This is certainly not the situation here. Consequently, we find that Dr. Stotlar's post-trial motion was properly denied as not being timely filed.

Dr. Stotlar also contends that the trial court erred in awarding one-half of the stocks titled in his name and one-half of the bearer bonds in his possession to Mrs. Stotlar since she did not prove that this property equitably belonged to her. He also challenges the court's finding that Mrs. Stotlar had "special equities" amounting to one-half ownership of two parcels of real estate of which he was the owner of record.

■■■ In determining the propriety of the divorce decree's property disposition, we must remember that the trial court's authority in this regard is based upon the powers conferred by our Divorce Act rather than upon general equity powers. (*Debrey v. Debrey*, 132 Ill. App. 2d 1072, 270 N.E.2d 43.) Only two sections of the Divorce Act allow the trial court to order a conveyance of property or an interest therein to one spouse which ostensibly belongs to the other. These sections are sections 17 and 18 (Ill. Rev. Stat. 1975, ch. 40, pars. 18 and 19). We shall have occasion to discuss section 18 later when addressing other contentions of Dr. Stotlar, but we now direct our attention to section 17 of the Act (Ill. Rev. Stat. 1975, ch. 40, par. 18), which provides:

> "Whenever a divorce decree is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

To justify the conveyance of one spouse's interest in property to the other under section 17 of the Divorce Act, the special equities therein must be specifically alleged in the complaint and established by the evidence. (*Lawyer v. Lawyer*, 19 Ill. App. 3d 571, 312 N.E.2d 7; *Palacio v. Palacio*, 33 Ill. App. 3d 1074, 339 N.E.2d 427.) Dr. Stotlar's quarrel with the trial court's findings concerning his securities and the two items of real estate stems from his belief that Mrs. Stotlar's "special equities" were not established by the evidence.

The trial court found in the decree of November 20, 1975, that both parties owned a one-half interest in two parcels of real estate which they had held in joint tenancy. One parcel was their marital home in Pinckneyville, which the court found to be valued at $90,000. The other parcel was land in Bay St. Louis, Louisiana, valued at $15,000. Dr. Stotlar

does not challenge these findings. The court also found that Dr. Stotlar owned a one-fourth interest in the Post Office Building and a one-third interest in the Stotlar Drug Store Building, both in Pinckneyville, Illinois; the former interest was valued at $10,000 and the latter at $30,000. The court specifically adjudged that Mrs. Stotlar was entitled to one-half of Dr. Stotlar's interest in these last two properties because of "special equities." It is with this finding that Dr. Stotlar takes issue.

By its decree, the court ordered Dr. Stotlar to convey his interest in the marital home to Mrs. Stotlar. Mrs. Stotlar was directed to transfer her interest in the Bay St. Louis property to the doctor. Dr. Stotlar was further awarded complete ownership of the interests in the Post Office Building and the Stotlar Drug Store Building. Since, after offsetting values, this transfer arrangement left Dr. Stotlar with an interest of $17,500 in the home, the court decreed that he would receive stocks or bonds in his name or as bearer instruments to make up the difference and equalize the allocation of the real estate.

The aggregate value of Dr. Stotlar's securities which were affected by the court's order of conveyance was approximately $180,000. The court found that Mrs. Stotlar was entitled to one-half of these stocks and bonds because of her special equities and ordered Dr. Stotlar to transfer and deliver one-half of these securities, less $17,500 interest therein, to Mrs. Stotlar.

Both findings of the court that Mrs. Stotlar had special equities were expressly based on the fact that these items were purchased by means of the parties' joint checking account. Mrs. Stotlar admitted in her testimony at the trial that none of the funds used to purchase any of the real estate interests or securities was earned or provided by her.

■■■ This court has consistently adhered to a principle stated by our supreme court in *Everett v. Everett*, 25 Ill. 2d 342, 185 N.E.2d 201 which is applicable to this case. (*E.g., Musgrave v. Musgrave*, 38 Ill. App. 3d 532, 347 N.E.2d 831.) That principle was stated in *Everett* as follows:

> "It is * * * well established that the rights or interests that one spouse has in the property of the other by virtue of the marriage relation alone will not justify a conveyance under section 17 [citations], but it must be alleged and proved by the spouse seeking a part or all of the property in the name of the other that he or she has furnished valuable consideration such as money or services other than those normally performed in the marriage relation which has directly or indirectly been used to acquire or enhance the value of the property." (25 Ill. 2d 342, 347-48, 185 N.E.2d 201, 204.)

The record in this case reveals that Mrs. Stotlar offered no proof that she supplied any consideration whatsoever for the acquisition or

improvement of these items of property. In fact, she admitted that they were not acquired with any funds of her own. The only evidence she presented to prove that she was the equitable owner of one-half of her husband's securities and real estate was that they were purchased by checks drawn upon the joint bank account. Under the circumstances of this case that fact alone cannot establish the equitable ownership necessary for a court to transfer a spouse's property interest pursuant to section 17 of the Divorce Act. Of particular importance is the fact that the funds in that account were almost entirely from earnings of Dr. Stotlar in his medical practice. The findings and orders of the November decree declaring equitable ownership of one-half of the personal property held in Dr. Stotlar's name and assigning that one-half to Mrs. Stotlar are accordingly reversed.

Mrs. Stotlar argues in support of the findings of special equities that by placing his money in a joint checking account, Dr. Stotlar was making a complete gift to her of one-half of such funds, and, therefore, property he bought for himself through the account was one-half hers. Mrs. Stotlar's position in relation to his substantial purchases of property for her and titled in her name by means of the account is dissimilar. Those items she considered solely her property and the trial court so found and decreed.

■■ The fact that this couple chose to transact their financial affairs during their marriage through the medium of a joint checking account is not sufficient to support findings of partial equitable ownership in Mrs. Stotlar of the securities and real estate of Dr. Stotlar. The evidence indicates that this account was merely a matter of convenience. The cases cited by Mrs. Stotlar to support her assertion that one-half of her husband's funds placed in the checking account were a gift to her all deal with real estate held in joint tenancy. We believe they have no precedential value for the problem at hand. We have found no Illinois authority to support her novel argument.

Mrs. Stotlar also cites three other cases, *Gercke v. Gercke*, 331 Ill. 413, 163 N.E. 323; *Gerhardt v. Gerhardt*, 18 Ill. App. 3d 658, 310 N.E.2d 224; and *Kratzer v. Kratzer*, 130 Ill. App. 2d 762, 266 N.E.2d 419, to support the court's conveyance. She argues that these cases stand for the proposition that a court in a divorce proceeding may declare a resulting trust in favor of one spouse if the other spouse has withdrawn a substantial amount from a joint bank account for his or her exclusive use. The desired implication is that the trial court could properly declare Mrs. Stotlar one-half owner of the securities and items of real estate because the withdrawals necessary to purchase securities and real estate, valued at the time of trial at $180,000 and $40,000 respectively, must have been of substantial amounts.

■■  Considering the circumstances in the case at bar we must conclude that these authorities do not support the court's findings and order for conveyance. First, the *Gercke* and *Gerhardt* cases stand for the proposition that a spouse is not warranted in withdrawing *all* funds from a joint account rather than merely a substantial amount. This situation was not shown to exist. Second, the circumstances of the cases in which this rule has been applied are so dissimilar to those in the case at hand that the rule has no applicability here. In both cases mentioned above the evidence showed that at the time of the couple's separation there was a "race for the bank," either to withdraw all the funds which had been contributed entirely by the other spouse or to strike the name of the other spouse from the account although that person had contributed substantial amounts to the account. (See also *Swofford v. Swofford*, 327 Ill. App. 55, 63 N.E.2d 615.) There is no evidence in the instant record that Dr. Stotlar purchased these items in furtherance of an improper motive. The record does not show that the securities and real estate were purchased all at once when the marital relation became strained. To the contrary, the record suggests these items were obtained piecemeal over the course of the marriage. Neither does the record reveal that the depletion of the bank account was ever threatened by these purchases. This case simply does not present the proper circumstances for declaring a trust in favor of Mrs. Stotlar. The court's main concern in these withdrawal cases has been to trace the funds to determine the proportional ownership of such in order that an equitable division could be made. Such an inquiry here would lead one to Dr. Stotlar who contributed most, if not all, of the funds to the account.

Dr. Stotlar further contends that the trial court erred in awarding Mrs. Stotlar a one-half interest in certain shares of Air Illinois stock and in awarding one-fourth of the estimated income tax payments he made through November 20, 1975, to Mrs. Stotlar for use in her 1975 tax returns. He argues that these awards are improper awards of alimony in gross.

■■  The trial court found in the November decree that Mrs. Stotlar was entitled to one-half of "Air Illinois shares; number unknown" because of her special equities therein established through the joint checking account. This finding was part of the award of securities we have already discussed and found improper. Even if we had affirmed the trial court's finding of Mrs. Stotlar's equitable ownership of securities purchased by Dr. Stotlar by means of the joint checking account, we would still have been required to reverse the award as it applied to these shares. The appellate court will substitute its finding for those of the trial court if such are clearly against the manifest weight of the evidence. (*Shumak v. Shumak*, 30 Ill. App. 3d 188, 332 N.E.2d 177.) The only evidence relating to the Air Illinois shares establishes that they were owned by the "Medical

Arts" partnership and paid for through its account rather than through the joint checking account and the court's finding regarding these shares was against the manifest weight of the evidence.

■■■ Since the trial court's finding and award with respect to these shares was expressly based upon section 17 of the Divorce Act and not section 18 (Ill. Rev. Stat. 1975, ch. 40, par. 19), the so-called "alimony in gross" section, it is not actually necessary to discuss whether the order would have been valid under section 18. Since, however, a rehearing will be necessary in this cause, we will consider the possible propriety of such an award under section 18. We find that the conveyance to Mrs. Stotlar of any interest in these securities or any other property as alimony in gross would not be proper under the present decree.

■■ Section 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19) provides in part:

> "When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband, * * * as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just * * *. The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable."

It is well settled that this section means that if the court orders a party to make periodic payments of alimony to his or her ex-spouse, it cannot also grant alimony in gross, such as requiring the conveyance of property from one to the other in lieu of alimony. (*Rich v. Rich*, 24 Ill. App. 3d 1083, 322 N.E.2d 610; *Overton v. Overton*, 6 Ill. App. 3d 1086, 287 N.E.2d 47.) The trial court granted Mrs. Stotlar periodic alimony in the amount of $1,400 per month. It would therefore not be proper to award her any property which belongs to Dr. Stotlar in lieu of alimony. Consequently, a conveyance of the Air Illinois stock to Mrs. Stotlar would be error pursuant to the trial court's power under section 18 of the Divorce Act as well as under section 17.

■■ Similarly, any interest in the award to Mrs. Stotlar of one-fourth of the estimated income tax payments made by Dr. Stotlar in 1975 which exceeds her actual proprietary interest therein is an improper award of alimony in gross.

Neither party has afforded this court with sufficient facts to determine what Mrs. Stotlar's actual tax liability for 1975 was. The evidence shows that Dr. Stotlar paid $24,531.92 and $1,608.80 respectively to the Internal Revenue Service and Illinois Department of Revenue as payments of estimated tax liability for 1975. When these figures are added to the tax

credits applied from the Stotlars' joint returns of 1974, the figures increase respectively to $30,000 and $1,875. Mrs. Stotlar's one-fourth interest would therefor amount to a total of $7,968.75, $7,500 from federal payments and $468.75 from state payments.

■■ We believe that Mrs. Stotlar's proprietary interest in the estimated tax payments for 1975 is commensurate with a figure which represents her 1975 tax liability and an equitable portion of the tax credit from the Stotlars' 1974 joint tax returns. Judging from the evidence presented at trial concerning Mrs. Stotlar's income and the amount of the 1974 tax credits, we believe the award made far exceeds this figure. Since we do not have the necessary information to determine the proper award, we must reverse the present provision of the decree concerning the tax payments and remand this cause for further proceedings to ascertain the proper award.

Mrs. Stotlar makes two contentions in her cross-appeal. The first contention is that the trial court should have awarded her more alimony.

The purpose of an alimony award is to furnish support to the wife or to contribute to her partial support. (*Gilmore v. Gilmore*, 28 Ill. App. 3d 36, 328 N.E.2d 562; *Borowitz v. Borowitz*, 19 Ill. App. 3d 176, 311 N.E.2d 292.) The proper measure of alimony is the need of the wife considered in connection with the husband's ability to pay. (*Scruggs v. Scruggs*, 23 Ill. App. 3d 1004, 320 N.E.2d 406; *Klebba v. Klebba*, 108 Ill. App. 2d 32, 246 N.E.2d 681.) No single criterion is controlling and each case will depend on the individual facts of that case. (*Scruggs v. Scruggs.*) The amount of the award lies within the sound discretion of the trial court and its decision will not be set aside unless it is contrary to the manifest weight of the evidence. *Gilmore v. Gilmore; Hoffmann v. Hoffmann*, 40 Ill. 2d 344, 239 N.E.2d 792.

■■ The trial court determined that a proper award of periodic alimony for Mrs. Stotlar was $1,400 per month or $16,800 annually. We have carefully examined the record and find that the court's award was fully supported by the evidence. Nevertheless, to effectuate justice in this case this cause must be remanded for further hearing on the amount of alimony. The trial court specifically found in its order of April 22, 1976, dismissing Dr. Stotlar's post-trial motion, that in making an award of alimony and in denying certain attorney's fees to Mrs. Stotlar, the court took into consideration the amount of property, including the division of real estate and the stocks and bonds that she received under the terms of the decree. In view of our holding with respect to these securities and real estate, it is apparent to us that an increase in the amount of alimony payable to Mrs. Stotlar is warranted. In *Debrey v. Debrey*, the court of review directed just such a remand under circumstances similar to those presented here.

Mrs. Stotlar's second contention is that the trial court erred in refusing to order Dr. Stotlar to pay her attorney's fees incurred in connection with the trial of this cause. By its November decree, the trial court ordered each party to pay their respective attorney's fees for trial representation. Dr. Stotlar voluntarily paid Mrs. Stotlar's attorneys $2,000 for their trial services. The court subsequently ordered Dr. Stotlar to pay attorney's fees of $2,500 for Mrs. Stotlar's defense of this appeal. Mrs. Stotlar argues that the trial court should have ordered Dr. Stotlar to pay the balance of her attorney's fees for trial work, amounting to approximately $4,150.

■■ It is well settled that the allowance of attorney's fees in a divorce proceeding lies within the sound discretion of the trial court (*Watson v. Watson*, 28 Ill. App. 3d 320, 328 N.E.2d 600; Ill. Rev. Stat. 1975, ch. 40, par. 16), and unless such discretion is clearly abused its exercise will not be interfered with by the reviewing court. (*Borg v. Borg*, 32 Ill. App. 3d 1075, 337 N.E.2d 391.) In order to justify allowance of attorney's fees in a divorce action, the party seeking such relief must show financial inability to pay the fees and the ability of the other spouse to do so. (*Frank v. Frank*, 34 Ill. App. 3d 957, 342 N.E.2d 404; *Lacey v. Lacey*, 24 Ill. App. 3d 776, 321 N.E.2d 524.) After carefully reviewing the evidence, we are unable to find that the trial court abused its discretion in denying her prayer for attorney's fees. We do, however, direct the trial court to reconsider this matter on the remand of this cause because the trial court, as already noted, specifically stated that it took into consideration the property she received under the decree's division of securities and real estate in refusing Mrs. Stotlar's prayer for attorney's fees. The state of her assets is drastically changed as a result of our decision in this appeal.

For the reasons stated, the trial court's findings that Mrs. Stotlar had a one-half interest in the stocks and bonds of Dr. Stotlar and in his interests in the Post Office Building and the Stotlar Drug Store Building because of her "special equities," are hereby reversed. This cause is remanded for further proceedings not inconsistent with the views herein expressed in connection with the awards of estimated tax payments, alimony and attorney's fees. In all other respects the decree of the circuit court of Perry County is affirmed.

Reversed in part; affirmed in part, and remanded.

KARNS, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
Dr. Stotlar accepted substantial assets assigned to him by the decree. The trial court in its order denying Dr. Stotlar's post trial motion said:
        "The Court further finds that it appears the Plaintiff-

Counterdefendant has chosen to rely on those portions of said Decree that he finds acceptable and with which he agrees and challenge those portions with which he does not agree." A party cannot accept those parts of a decree which are favorable to him and appeal those parts that are unfavorable. (*Boylan v. Boylan*, 349 Ill. 471 (1932).) Therefore, in my opinion Dr. Stotlar is precluded from pursuing this appeal. I also believe that the majority erred in holding that Mrs. Stotlar had no interest in the stocks bought by Dr. Stotlar from the joint bank account. *Gerhardt v. Gerhardt*, 18 Ill. App. 3d 658, 310 N.E.2d 224 (3d Dist. 1974); *Gercke v. Gercke*, 331 Ill. 413, 419, 163 N.E. 323 (1928); *Kratzer v. Kratzer*, 130 Ill. App. 2d 762, 266 N.E.2d 419 (4th Dist. 1971).