*In re* MARRIAGE OF BETTY L. LaSUSA, Petitioner-Appellant, and ANTHONY LaSUSA, Respondent-Appellee.

First District (1st Division)    No. 78-1327

Opinion filed December 28, 1979.—Rehearing denied February 4, 1980.

Gerald A. Prendergast and Richard J. Prendergast, both of Chicago, for appellant.

Spagat and O'Brien, Ltd., of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Betty L. LaSusa, petitioner, sued Anthony LaSusa, respondent, for divorce. The trial court granted the divorce, awarded unallocated alimony and child support to petitioner and divided property between the parties. Petitioner appeals from the award of alimony and property.

The parties were married on November 5, 1950, and were divorced in June 1977. They have two daughters, who were 13 and 20 years old respectively at the time of the divorce. Petitioner was awarded custody of the minor child. After granting the divorce, the trial court reserved ruling on the issues of alimony, child support and division of property. Trial was held concerning these issues on June 8, June 20 and July 1, 1977.

Petitioner's and respondent's testimony at trial showed that the marital home in Norridge, Illinois, was in a land trust and petitioner and respondent jointly owned the beneficial interest. Respondent valued the home at $75,000 to $80,000, with an outstanding mortgage of $16,800. In addition, petitioner and respondent jointly owned a vacant lot in Boca Raton, Florida, which respondent valued at $20,000. Each also owned an automobile.

During the marriage, respondent and Robert Beaulieu had been partners in Beaulieu Realtors. Beaulieu Realtors was incorporated in June 1977 and respondent and Robert Beaulieu were the sole stockholders. Respondent and Robert Beaulieu had purchased several pieces of real estate while they were partners. At the time of the divorce, respondent and Robert Beaulieu each owned a one-half interest in a condominium in Fort Lauderdale, Florida, a 12-unit apartment building located at 1717

Leland Avenue, Chicago, and a building containing an office and eight apartments located at 5341 West Belmont Avenue, Chicago. Also, respondent, Beaulieu and another individual each owned a one-third interest in a vacant lot in Des Plaines, Illinois.

Respondent valued the condominium at $42,000, with a $7000 mortgage. He valued the apartment building on Leland Avenue at $35,000, with a mortgage of $32,000. Respondent testified that the building on Belmont Avenue was worth $200,000 to $225,000, with a mortgage of $155,000. He valued the vacant lot in Des Plaines at $288,000. It had been purchased with a loan on which there was a balance of $280,000. Respondent further stated that petitioner had co-signed the note and mortgage on the Belmont Avenue building. In addition, petitioner's one-half beneficial interest in the marital home had been pledged, along with respondent's one-half, to secure a line of credit with which respondent and Beaulieu had partially financed various real estate acquisitions.

At the time of the divorce respondent had $1000 in a checking account and $9000 in a savings account; the latter had been pledged as security for a $15,000 loan with which respondent had paid federal income taxes. Respondent, Robert Beaulieu, and another individual each owned one-third of the stock in C.L.B. Corporation, a Chicago real estate office, and respondent received yearly dividends of from $3000 to $6000 on this stock. In addition, respondent had 6800 to 6900 shares in a retirement plan, which he valued at $3.56 or $3.66 per share; benefits were not payable until he retired. Respondent owned $500 worth of stock options and two $100,000 life insurance policies on his own life. He was also the trustee of two separate bank accounts for his daughters. Each account contained $8100 and was intended for his daughters' college educations. Petitioner never deposited any money in these accounts, and respondent, at the time of the divorce, was under a court order enjoining him from using the money.

At the time of the divorce, respondent's salary from Beaulieu Realtors was $300 per week, plus an additional $1000 per month. The trial court stated that respondent's income was listed as $64,000 on his tax return for one of the years prior to the divorce, but that respondent's testimony showed that his present income was less because Beaulieu Realtor's business was not as successful as it had been. Petitioner testified that respondent listed his income as $48,000 on his 1974 tax return.

Respondent was living with his parents in a Chicago apartment at the time of the divorce. He was paying them $100 a month rent and $30 a month for the telephone. In addition, the older daughter had started attending college in September 1975 and respondent was paying $4600 a year for her tuition and board, and was giving her $100 per month for spending money.

Petitioner testified that she was not employed and had not been employed while married, and that she had recently had surgery to improve her blood circulation.

The parties finished presenting evidence on July 1, 1977. The trial court at that time orally stated in detail the terms of its decision awarding alimony, child support and property. Those same terms were subsequently set forth in a written supplemental decree entered by the court on November 8, 1977. Under those terms respondent was required to: pay $1000 per month as unallocated alimony and child support; pay up to $55 per month for hospitalization and major medical insurance for petitioner, and maintain hospitalization and medical insurance for both of his daughters; pay all of his daughters' extraordinary medical expenses until their emancipation or until they complete their college education, whichever occurs later; maintain the $200,000 of life insurance on his life, with his daughters the beneficiaries for $150,000 and with petitioner a beneficiary for $50,000; pay for a four-year college education for each daughter; and pay petitioner's attorney fees.

Petitioner was allowed to remain in the marital home until their youngest daughter was emancipated or reached 18, or completed her high school education, or ceased living with petitioner, or the parties agreed to sell the home, whichever event occurred first. When the first of these events occurred, the house would be sold. Until sold, petitioner was to pay the interest on the mortgage and for upkeep of the home, with respondent to pay the principal on the mortgage, for which he would receive a credit against the proceeds of the sale. The remainder of the proceeds of the sale would be divided equally between the parties. The furniture, fixtures, furnishings and equipment in the marital home were awarded to petitioner.

Title to the Florida lot was to be changed from joint tenancy to tenancy in common, and the property could be sold upon written request of either party, the proceeds to be divided equally. Respondent at his discretion could sell his interest in the Florida condominium he owned jointly with Robert Beaulieu. When respondent's interest was sold, petitioner was entitled to one-half of respondent's proceeds.

All other property owned by either party remained their individual property.

On November 29, 1977, petitioner moved to vacate the award of alimony and property. Petitioner urged that the court should hear more evidence and award alimony and property on the basis of sections 503 and 504 of the new Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, pars. 503 and 504.) The court denied petitioner's motion.

Petitioner first contends that the trial court's award of alimony and

property should be reversed and the cause remanded because the award was based on the Illinois Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 1 *et seq.*), but should have been based on the new Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*), and failed to meet the requirements of section 503 and 504 of that Act. We disagree that the new act should apply.

The effective date of the Marriage and Dissolution of Marriage Act was October 1, 1977. Section 801 of that Act (Ill. Rev. Stat. 1977, ch. 40, par. 801) provides:

"(a) This Act applies to all proceedings commenced on or after its effective date.

(b) This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Evidence adduced after the effective date of this Act shall be in compliance with this Act..

(c) This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act.

(d) In any action or proceeding in which an appeal was pending or a new trial was ordered prior to the effective date of this Act, the law in effect at the time of the order sustaining the appeal or the new trial governs the appeal, the new trial, and any subsequent trial or appeal."

Petitioner admits that all of the evidence on the issues of alimony and property division was heard by July 1, 1977. The trial court on that date orally stated the terms of its decision awarding alimony, child support and property. Petitioner urges, however, that judgment was not entered with respect to alimony and property division until the written supplemental decree was filed on November 8, 1977. Therefore, petitioner argues, the new Act must be applied because section 801(b) states that the new Act is applicable "to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered."

Petitioner cites Supreme Court Rule 272 (58 Ill. 2d R. 272, Ill. Rev. Stat. 1977, ch. 110A, par. 272) to support her argument that judgment was not entered until the written supplemental decree was filed on November 8, 1977. Supreme Court Rule 272 states in part that "[i]f at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, * * * the judgment becomes final only when the signed judgment is filed." Petitioner argues that while the trial judge on July 1, 1977, announced his decision with respect to alimony and division of property, the written decree containing this decision signed by him was not filed until November 8, 1977, and, therefore,

according to Supreme Court Rule 272, judgment was not entered with respect to alimony and division of property until November 8, 1977, and the new Act must apply.

An argument similar to that of petitioner was recently rejected by the supreme court in *West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880, where the court held that a divorce action should not be remanded for reconsideration under the new Marriage and Dissolution of Marriage Act when the trial court has determined all the issues prior to the effective date of the Act, but the final written decree is filed after that date.

In *West*, the husband filed his complaint for divorce on February 9, 1976. The presentation of evidence concluded on May 10, 1977. The trial court did not announce its decision from the bench, but on July 15, 1977, after submission of briefs, the court filed a signed document, captioned "memorandum," which granted the divorce and made provisions for child custody, alimony and various items of property held by the parties. The memorandum concluded with the statement "see judgment of divorce to be filed in conformity with the findings expressed herein."

The trial court entered the written judgment on November 2, 1977. The wife moved to vacate the decision on the grounds that it was contrary to sections 503 and 504 of the new Marriage and Dissolution of Marriage Act. The court denied the motion. The wife argued on appeal that under section 801(b) of the new Act, the new Act applies to proceedings in which judgment is entered after October 1, 1977, and that according to Supreme Court Rule 272 judgment was not entered until the written order of November 2 was filed. The supreme court rejected the wife's argument. The committee comments to Rule 272, the court stated, "make clear that the purpose of this rule was to resolve the difficulties which had arisen regarding the timeliness of an appeal where an oral announcement of judgment from the bench antedated the entry of a written judgment order." (*West*, at 233.) Timeliness of appeal was not an element in the case, said the court. Instead, the question was "whether issues on which the presentation of evidence has been completed and on which the trial court has rendered a written decision may or must be retried under the substantially different standards of a later enactment." *West*, at 233.

The court concluded that the trial court's provisions for alimony and property properly were based on the old Act. As support for its holding, the court noted that "[d]ecisions under the Marriage and Dissolution of Marriage Act have recognized that, where an appeal has been perfected prior to the effective date of that act, '[a]pplication of the new act to cases already decided at the trial level would not only be grossly unfair to one of the parties, it would also create an intolerable burden on the judicial system, requiring a court of review to decide issues without the benefits of vigorous advocacy attendant to a hearing on the merits or an initial

determination by a trial court.' " (*West*, at 233.) The court also quoted, with approval, *Staub v. Staub* (1978), 67 Ill. App. 3d 1004, 1007, 385 N.E.2d 771, where a post-trial motion was filed after the effective date of the new Act:

> "In our estimation, the legislature attempted through section 801(b) to allow only those issues which had not been fully litigated prior to the effective date of the new act to be decided under the new law. It is not this section's intent to require the relitigation of issues already decided under the previous law simply because post-trial motions are pending or filed after the effective date of the new act."

*West* makes it clear that the new Act does not apply to this case. All the evidence was presented by July 1, 1977, at which time the trial court explained in detail to the parties its award of unallocated alimony and child support and division of property. To require application of the new Act would necessitate retrial of these issues, which would be an unfair burden and expense to respondent.

■■ We hold that the new Marriage and Dissolution of Marriage Act does not apply in this case.

Petitioner also contends that even under the old Act the trial court abused its discretion by awarding her insufficient alimony on the basis of a statement by respondent's attorney exaggerating the college expenses respondent was paying for their daughter. We disagree that the trial court abused its discretion in awarding alimony.

At trial on July 1, 1977, the trial court initially stated that it would award $1500 as unallocated alimony and child support. Respondent's attorney stated that this was too much, that respondent's current expenses precluded this high an award, and that respondent was "spending close to $10,000 a year to put a child through college [and] * * * still has to pay for the other child in college after he pays this." The trial court then stated that unallocated alimony and child support would be $1000 per month and explained to petitioner's attorney that he had forgotten that one of the children was in college.

The trial court heard respondent testify that he was paying $4600 a year for tuition and board for his older daughter and giving her $100 per month for spending money. Also, the award of $1000 instead of $1500 per month as alimony and child support would result in a yearly difference of $6000, approximately the same amount respondent testified he was paying yearly to put his older daughter through college. There is no reason to believe that the trial court awarded petitioner $1000 on the basis of the misstatement by respondent's attorney concerning the amount of college expenses respondent was paying.

The amount of alimony awarded under section 18 of the Divorce Act

(Ill. Rev. Stat. 1975, ch. 40, par. 19) is within the sound discretion of the trial court and the court's decision should not be set aside unless it is contrary to the manifest weight of the evidence. (*Stotlar v. Stotlar* (1977), 50 Ill. App. 3d 790, 365 N.E.2d 1097.) The proper measure of alimony is the need of the wife and the husband's ability to pay. No single criterion is controlling and each case depends on the individual facts of that case. *Stotlar.*

■■ Respondent testified that at the time of the divorce his salary was $300 per week, plus an additional $1000 a month, and he received $3000 to $6000 a year in dividends, for a maximum gross amount of $32,400. Thus, the amount of alimony and child support awarded petitioner was more than one-third of respondent's gross income. Also, respondent must pay his own living expenses, $55 a month for hospitalization insurance for petitioner, premiums for hospitalization insurance for both daughters, the principal on the mortgage on the marital home until sold, and, presumably, interest on the debt he and Robert Beaulieu incurred in acquiring their various real estate holdings. In addition, respondent had slightly over $16,000 in trust accounts for his daughters' college educations, but had to pay college expenses for another six years. Based on this evidence, we cannot say that the trial court's award of alimony and child support was an abuse of discretion.

Petitioner finally contends that even if the old Act applies, she had special equities in respondent's interests in Beaulieu Realtors and the realty owned by respondent and Robert Beaulieu, which entitled her to a share of respondent's interests. Petitioner maintains that her special equities were established when she co-signed the note and mortgage on the Belmont Avenue building, and when her and respondent's beneficial interest in the marital home was pledged to secure the line of credit with which respondent and Robert Beaulieu partially financed their real estate acquisitions.

■■ To justify a conveyance of property owned by one spouse to the other under section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18), the party seeking the conveyance must plead and prove special circumstances and equities which entitle that party to an interest in the property. (*Hogan v. Hogan* (1978), 58 Ill. App. 3d 661, 374 N.E.2d 1040; *Stotlar v. Stotlar* (1977), 50 Ill. App. 3d 790, 365 N.E.2d 1097.) The spouse claiming special equities in property must show that he or she contributed money or services other than those normally performed in the marriage relationship which directly or indirectly were used to acquire or enhance the value of the property. *Hogan v. Hogan.*

■■■ The contributions cited by petitioner would appear to be insufficient to have given her special equities in respondent's interests in Beaulieu Realtors and the real estate owned by respondent and Robert Beaulieu.

However, assuming *arguendo* that petitioner correctly claims special equities, her claim was certainly satisfied when the trial court awarded her the right to half of respondent's proceeds when the Florida condominium owned by respondent and Robert Beaulieu is sold.

Respondent's total equity in the real estate owned by him and Robert Beaulieu at the time of the divorce was $44,166 to $55,666. Respondent's equity in the condominium at the time of the divorce was valued at $17,500. If the condominium had been sold then, petitioner's share of respondent's proceeds would have been $8,750, even though petitioner never had an ownership interest in the condominium. Clearly, giving petitioner the right to one-half of respondent's proceeds when the condominium is sold was sufficient to satisfy any special equities she may have acquired when she co-signed the note and mortgage and pledged her one-half beneficial interest in the marital home.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.